JONATHAN D. CONDICT, Respondent, v. JANE H. COWDREY, Appellant.

To entitle a broker to recover commissions on a sale of real estate, where the contract with him requires an actual sale to be effected through his agency, it is not sufficient to show a provisional arrangement, which has failed because of the non-fulfillment of a condition not dependent upon the action of the vendor; but a binding and enforcible agreement for the sale and conveyance of the land must be proved.

Plaintiff, a real estate broker in New York city, was employed by defendant to effect a sale of certain lands in Kentucky, to which she supposed she had title, she agreeing to pay a commission specified if the land was sold through his agency.    Plaintiff procured a purchaser, who entered into an agreement with defendant, to the effect that said purchaser would take the lands at a price specified, paying $2,000 down, and executing acceptances for the residue, defendant to convey by quit-claim deed.    As the title to the land had not been examined, it was agreed that the deeds with the acceptances were to be deposited in escrow, to be delivered if it should appear on examination that defendant had a good title; if found that she had no title, then there was to be no

. sale. The papers were executed and deposited as agreed, but upon examination it appeared that defendant had, in fact, no title. The purchaser thereupon refused to complete the purchase. *Held*, that plaintiff was not entitled to recover.

Reported on a former appeal, 123 N. Y. 463.

(Argued June 28, 1893; decided October 3, 1893.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made July 5, 1892, which affirmed a judgment in favor of plaintiff entered upon a verdict and affirmed an order denying a motion for a new trial.

This action was brought to recover commissions claimed to be due plaintiff as broker upon a sale of land.

The facts, so far as material, are stated in the opinion.

*W. W. MacFarland* and *William M. Ivins* for appellant. No sale was effected, and, therefore, the plaintiff cannot recover. (*Cornish* v. *Capron*, 136 N. Y. 233; *Goddard* v. *Foster*, 17 Wall. 142; Stephen's Dig. of Ev. 168, 169; *Park* v. *M. A. & T. Co.*, 54 N. Y. 589; *Hamilton* v. *L., L. & G. Ins. Co.*, 136 U. S. 242; *Groat* v. *Gill*, 51 N. Y. 431; *F. N. Bank* v. *Dana*, 79 id. 108; *Sweet* v. *Burnett*, 136 id. 204.)

*Henry G. Atwater* for respondent. The plaintiff had earned his commission when he had negotiated the contract of sale. (*Stanton* v. *Miller*, 58 N. Y. 202; *Sibbald* v. *B. I. Co.*, 83 id. 382; *Barnard* v. *Monnot*, 1 Abb. Ct. App. Dec. 110; *Knapp* v. *Wallace*, 41 N. Y. 477; *Glentworth* v. *Luther*, 21 Barb. 145; *Holly* v. *Gosling*, 3 E. D. Smith, 262.)

MAYNARD, J. The defendant was the executrix of her husband's will and the devisee of his real estate. Among the title papers which came into her possession were conveyances to him of eight different tracts of land in various counties in the state of Kentucky, aggregating 435,000 acres, and what purported to be duly certified abstracts of title, showing, upon their face, a complete chain from the commonwealth of Vir-

ginia. It does not appear that the defendant, or her managing agent, one Samuel R. Dickson, had any knowledge of the genuineness of these abstracts. In 1887 Dickson, acting for the defendant, employed the plaintiff, a real estate broker, to effect a sale of these lands for her, and on May 10th she addressed, signed and delivered to the plaintiff the following written memorandum of his employment:

"I hereby agree to pay you a commission of ten per cent on the price I may accept for the 435,000 acres of land in Eastern Kentucky belonging to me, if sold through your agency. I hereby acknowledge your agency in bringing Jere Baxter and his associates to me, whereby a refusal until Sept. 10 next was given by me."

On the same day a written option was given by her to Baxter for the purchase of these lands at ten cents per acre for a period of four months, and it was expressly stipulated in this writing, "that he, the said Baxter, shall, at his own expense, time and labor, have the titles to said property examined into, and the condition and character of the lands examined, and gather all information he may deem necessary for him to act intelligently in the premises, the vendors not being able to give him such information." This option was to be renewed for ninety days, if Baxter desired it. Baxter resided at Nashville, Tenn., and endeavored to associate W. A. Milliken, a lawyer of that city, with him in the negotiations. Milliken visited the lands and made some examination as to their location and quality and the extent to which they were occupied by squatters, but made no investigation of the title. Baxter's option expired without effecting a purchase, and Milliken then continued the negotiations in his own behalf. As the defendant required payment either in money or short time paper, it seemed necessary for him to obtain the assistance of some one possessed of the requisite means to meet these requirements. In April, 1888, he succeeded in inducing Frederick Wolff, a banker and broker in New York, to consent to join with him in the purchase of the property. It was finally agreed between them and the defendant's agent that

they would pay at the rate of ten cents per acre, or $43,500
for the property, as follows: $2,000 down, and three accept-
ances of $13,833.33 each, drawn by Milliken on Wolff to the
order of defendant and accepted by Wolff, payable at three,
four and six months, respectively, and the defendant should
sign and acknowledge the deeds of the property, and that
the acceptances and the deeds should be deposited as an escrow
with the Second National Bank of New York, and upon the
payment of the acceptances, the deeds were to be delivered by
the bank to Wolff and Milliken.    On April 26th, 1888, the
$2,000 were paid, and the acceptances signed and the deeds
executed, and both deposited with the bank, as agreed, and a
written receipt signed by the defendant and delivered to Mil-
liken and Wolff, showing that all these things had been done.
At the same time there was left with the bank a written memo-
randum called "Conditions of Hypothecation," not signed by
anyone, and, as shown by the evidence, drawn by the defend-
ant's agent without the knowledge or assent of the purchasers,
reciting that there was placed with the bank, for safe-keeping
and delivery, eight deeds transferring the title to 435,000
acres of land, situated in the state of Kentucky, from the
defendant to Milliken and Wolff; also, three obligations for
the payment of money, describing them, which three obliga-
tions are made for the purchase of said lands, and stating that
if the obligations are paid at maturity, the deeds are to be
delivered, but in case of any default in the payment, the deeds
are to be delivered to the defendant, and that all moneys paid
shall be forfeited in liquidation of damages sustained by virtue
of the non-payment of any of the obligations.    As yet the title
had not been investigated.    The defendant was not willing to
make any other conveyance than a quit-claim deed; the
intending purchasers were not willing to complete the
purchase and take the property unless the title was found,
upon examination, to be good; and the proof shows that it
was also a part of the agreement of the parties that Milliken
and Wolff should examine the title before the acceptances
matured, and if it was found that the defendant had no title,

then there was to be no sale. Before the first acceptance fell
due Milliken went to Kentucky and examined the title and
found that the abstracts, which the defendant had, were false
in every material respect; that the signatures to the certifi-
cates were genuine, but the conveyances set forth in the
abstracts did not exist and had never existed, and that there
was a complete chain of title to the lands in another upon the
public records. The defendant, therefore, had no lands, and
not even a colorable title to any lands in Kentucky, which
she could convey. Milliken and Wolff immediately notified
the defendant and the bank of the discovery of the non-
existence of her title, and of their refusal to complete the
purchase, and they demanded of the defendant the re-pay-
ment of the $2,000, and of the bank the surrender of the
acceptances. They also brought an action against the
defendant in the U. S. Circuit Court for the recovery of the
money and the cancellation of the acceptances. The defend-
ant was willing to refund the $2,000, but Milliken and Wolff
demanded damages for fraud in the transaction, which the
defendant resisted. This suit was compromised June 20,
1889, by the defendant agreeing to re-pay the $2,000, and to
pay $900 in addition for the expenses of Milliken and Wolff,
and the acceptances were to be surrendered and the deeds
returned.

It appears from the testimony of Milliken why the investi-
gation of the title was left to the last. He was acquainted
with the reputation of the officer who certified to the abstracts,
and knew him to be a prominent lawyer of Kentucky, and
had confidence that the abstracts would, upon examination,
be found to be correct.

‌The plaintiff insists that there was a sale of the property by
the defendant to Milliken and Wolff, and that he was entitled
to his commissions under the agreement of May 10th, and he
has recovered judgment for the full amount and interest, from
which this appeal has been taken.

When the plaintiff rested, the defendant moved for a non-
suit upon the ground that this transaction, which we have

detailed, was not a sale which entitled plaintiff to a commission, but simply an option, and that under the terms of that option the property was not finally taken; in other words, that the transaction was not consummated, and failing in the consummation, the property not having been sold, nothing was earned by the plaintiff. This motion was denied and also a like motion, at the conclusion of the evidence, and an exception taken.

This case has been here on a former appeal (123 N. Y. 463) and it was then held, we think, that upon substantially the same proof as that made by the plaintiff's witnesses, the transaction between the defendant and Milliken was not a sale, but a mere option to buy, and that the plaintiff failed to establish his cause of action. Upon that trial the plaintiff relied upon the receipt and the memorandum of the conditions of hypothecation as constituting a written contract which could not be varied, explained or modified by parol. But a single witness was examined by the defense, the agent Dickson, who testified that "they were not willing to pay for the land until they had searched the title, and to give them that opportunity the postponement of the cash purchase was deferred, as specified in the notes, upon the express agreement that the deeds and the notes should be placed in escrow till such time as they might be able to be satisfied as to the title, and if the title was satisfactory they would pay the paper and take the deeds; those were the terms of the transaction."

The court upon that trial rejected this evidence and directed a verdict for the plaintiff, upon the ground that all prior oral negotiations were merged in the written contract, which must control.

This ruling was held to be erroneous by this court, and Judge FINCH, commenting upon the testimony of Dickson, which we have quoted, said: "If this evidence is true, what appears upon the face of the papers to have been an agreement of sale, is in reality a privilege to purchase at a fixed price, and to refuse to purchase upon the forfeiture of a definite sum; or what seemed to be an agreement of sale, is in

truth, a mere option to purchase. If this evidence is true, the alleged vendees never bound themselves to take the land, but preserved their freedom to refuse, and the acceptances in Mrs. Cowdrey's hands were so much waste paper and incapable of being enforced. Her sole right was to retain the money paid, and the alleged vendees were never bound to take title or pay the purchase money. In other words, there was no absolute contract of sale, but merely an option." The witness Dickson was sharply contradicted by the plaintiff upon other points, and this court held that, so long as the case rested upon his evidence, it should be submitted to the jury.

The course of the present trial was widely different. The plaintiff produced Milliken as a witness, who gave a detailed history of the negotiations between him and the defendant's agent, from their inception to the time when they were finally broken off by the discovery of the failure of the title. He was corroborated by Wolff and by Montague, the president of the bank, both of whom were called by the plaintiff. His testimony makes it entirely clear that under the former decision of this court, there was never a sale but only an option to buy, which never ripened into an actual purchase. He states that he refused to complete the purchase, because, upon examination of the records in Kentucky, he found that the defendant did not have the title, which the abstracts purported to show; that "we never consummated the sale;" that the acceptances and deeds were deposited in the bank in escrow, there to remain until the acceptances were all due and paid, when the deeds were to be delivered, and meanwhile they were to examine into the condition, character of and title to the lands, and if the title was not found to be as set out in the abstracts, the contract of purchase was not to be carried out; that the contract was not to become absolute unless the title proved upon examination to be as represented; that they were negotiating for the purchase of the title as stated in the abstracts, and if it turned out that there was no such title, there was no purchase. The plaintiff's witness Wolff testified: "It was an agreement this way: Mr. Milliken

to examine the abstract of title in the different counties of Kentucky, and to verify it, and on his verification I had to pay the balance of the notes," and the sale was conditional upon that. Again, he says : " The sale was made in this way : They furnished me with the abstract of title, and stated that these deeds as stated in the abstract were recorded in the different counties ; I was willing to take the title, a quit-claim deed from Mrs. Cowdrey, provided that these deeds were in accordance with the abstract of title ; I had an agreement with Milliken about this, based upon this agreement with Mrs. Cowdrey." In his agreement with Milliken it is recited that the latter " has an option for the purchase of several tracts of land in Eastern Kentucky " from the defendant. The witness Montague testified that he never delivered the deeds to Milliken ; " they were returned by order of all parties to Mrs. Cowdrey, or rather to Mr. Dickson for Mrs. Cowdrey, and so the transaction was off ; the escrow was surrendered and the transaction was off."

It is, therefore, apparent that upon this trial the defendant was not required to rest her defense upon the evidence of the contradicted witness Dickson. By the contract between the plaintiff and defendant he was not entitled to commissions, unless there was an actual sale of the property effected through his agency. It must appear to have been a binding and enforcible agreement for the sale and conveyance of the land ; and it is not sufficient to show a provisional arrangement which has failed because of the non-fulfillment of a condition not dependent upon the action of the vendor. This is not a case where the owner refused to consummate the sale after the broker had found a purchaser upon the terms originally proposed, or where the vendor has been unable to give the stipulated title on account of some defect in it, either known at the time the contract was executed, or subsequently discovered. (*Duclos* v. *Cunningham*, 102 N. Y. 678 ; *Sibbald* v. *Bethlehem Iron Co.*, 83 id. 378 ; *Knapp* v. *Wallace*, 41 id. 477 ; *Barnard* v. *Monott*, 1 Abb. Ct. App. Dec. 110.) There was no failure on the part of the defendant to abide by her offer or agreement to sell. The

negotiations failed because the buyers availed themselves of the privilege, which they had reserved, to recede from the propositions to purchase, upon a specified. contingency, which happened, and it was not the fault of the defendant that the bargain was never closed.

The judgment and order must be reversed and a new trial granted, costs to abide the event.

All concur, except EARL, J., not voting.

Judgment accordingly.