Hatch, J.
The plaintiff, by his action, seeks to'recover commission due him as a broker for effecting a contract of sale of real estate. The evidence relied upon to establish plaintiff’s employment is satisfactory, and clearly authorized the jury so to find. This is scarcely contended against. The real question in the case *584 is, did plaintiff fulfill the contract which he undertook ? If so, he is entitled to remuneration. Whatever doubt existed as to what constitutes the engagement of a broker under such employment was set at rest by the decision in Sibbald v. Bethlehem Iron Co., 83 N. Y. 382, where it is stated “that the duty assumed by the broker is to bring the minds of the buyer and seller to an agreement for a sale, and the price and terms on which it is to be made; and, until that is done, his right to commissions does not accrue.” The minds must meet upon the contract to sell and the terms upon which it is made. When this is accomplished, it matters not what these terms are, or whether carried out or not, or whether the failure to finally consummate it is due to the, act of the vendor or vendee, for the broker has then fulfilled all that his contract of employment called for. Gilder v. Davis, 137 N. Y. 504; 51 St. Rep. 179; Hodgkins v. Mead, 29 St. Rep. 671; 8 N. Y. Supp. 854; affirmed 130 N. Y. 676; 41 St. Rep. 952 ; Martin v. Bliss, 57 Hun, 159; 32 St. Rep. 930. It is not of the essence of the contract that the agreement of sale should be valid and enforceable. It may be verbal or written, plain or obscure in its terms, loaded with conditions or free from any. It may raise a complete barrier to its fulfillment, if objection to some of its provisions be made; but all are unavailing to defeat the broker’s-right, he acting in good faith, if the parties have, with full knowledge, met upon a common ground, and accepted what is offered as expressive of their minds. This point was objective when the broker started, and, having reached it, nothing more remained for him to do, and with all difficulties which thereafter arise out of the meeting of the minds of the principals he has nothing to dor is affected thereby no more than an uninterested third party, so far as his legal relations thereto are concerned. Nothing is found -in Condit v. Cowdrey, 139 N. Y. 273; 54 St. Rep. 648, which opposes this view. There the court was speaking of the contract where the broker agreed to consummate a sale,—a very different contract from one undertaken to bring about a meeting of the-minds of parties upon an agreement of sale. One may never be fulfilled, and yet the broker may recover; the other must be carried out, or no compensation is due. We are therefore to see what the parties in this case did, and, measuring their legal rights-by these rules, find, if it be possible, which side the line they fall. Different views of the evidence arising makes a correct understanding of it essential.
Prior to November 8, 1890, plaintiff was engaged in a negotiation for defendant’s land as a purchaser with others. On that day defendant drew up and delivered to plaintiff an option, whereby, among other things, he gave the latter á refusal of his farm of 166 acres for sixty days at the price of §175,000, free of taxes-then existing, payment down to be not less than $10,000, and an equal sum to "be thereafter paid every six months until at least $40,000 was paid. “ The balance over and above this amount, say $135,000, more or less, to remain on bond and mortgage on long time, say from five to ten years. There shall be in the mortgage a release clause, providing in general that subdivisions of the *585 tract of not less than ten acres each -will be released upon payment of such proportion of the mortgage as the released portion has in value to the balance, the intent being that the mortgage shall be kept good until paid; but, on the other hand, that I will not embarrass sales by demanding excessive payments upon the released portion.” The concluding clause provided: “In general it means that you have the option of taking the property at price named, details to be settled later in conformity to above understanding.” Subsequently plaintiff abandoned the idea of purchase, and thereafter acted for defendant as his agent in procuring a purchaser. This led to his bringing together Smith, Weill and defendant, when, after much discussion, these parties indorsed upon the back of the option, delivered by" defendant, and signed the same, the following:
“Buffalo, Dec. 18, 1890.
“ John H. Smith and Henry Weill hereby agree to purchase the within-described property at the within-mentioned terms and price, with the only exception that said price is changed to one hundred and fifty-five thousand dollars, and interest at five percent. G-eobge P. Sawyee.
“John H. Smith.
“Henby Weill.”
The testimony upon the part of plaintiff tended to establish that the parties reached an agreement upon the purchase price of the property, and that plaintiff proposed to draw a contract of sale; and that, as it was late, it was finally proposed that the option contract be used for that purpose, and the agreement; presently reached be indorsed thereon, which was done, and, constituted the contract of purchase. Thereupon the parties separated.
It is quite likely, if it be conceded that the parties executed the instrument indorsed upon the option without reservation, that it can be upheld as a valid contract for the sale of the land; but it is not necessary to now determine this question, and I express no opinion thereon. The question presented by this appeal is not necessarily dependent upon the fact of whether it is a valid, enforceable contract or not, but rather upon the proposition whether the parties’ minds met upon the agreement of sale as expressed therein; the one agreeing to buy and the other to sell. If they did, then plaintiff becomes entitled to recover, irrespective of the fact that indefiniteness attends upon the terms used to express that agreement. If they did not, however binding in form it may have been, yet, if the parties did not regard it as their entire contract, and it was not expressive of their minds, but they expected thereafter to make it so, no commissions were earned; and here is where the serious question arises. Weill was examined minutely and at length as to what the circumstances were attending the signing of the indorsement. Practically the whole is summed up in these words: “Mr. Folinsbee was very anxious to have that article signed, and I said: ‘That article *586 don’t amount to anything. If you want me to sign that, I will sign it; but I will consider the matter until to-morrow at 10 o’clock, and if at 10 o’clock to-morrow you don’t hear anything you can draw up a proper contract, and it will go. If I should conclude not to go in, I will come in before 10 o’clock and let you know.’ That is all the conversation. Then I signed the contract. I didn’t suggest about binding anybody else. I said it would not bind me. It was no contract, because there was nothing to show what property it is. It would not show any contract. I said I wanted the contract binding on the other side if I went in. * * * I understood the contract was of no force—was not binding upon anybody that signed it. I made that statement right there. I didn’t consider it a contract; it was merely an option. * * * I understood by signing this agreement Smith and I agreed to purchase the property upon the terms stated inside as far as they went, but it is not conclusive. That would not bind me or anybody else.”
The jury were authorized to find from this testimony that Weill signed the indorsement with a reservation of withdrawal, which, if waived, was to result in the execution of a contract expressive of the details of the proposed terms of sale. In this regard the court submitted the question in two aspects : Did the parties’ minds meet upon the fact that the writing signed by them constituted their entire agreement of sale? Did one of the purchasers reserve the right to cancel his connection therewith the day after it was signed ? The latter proposition, upon the evidence and by concession of plaintiff’s counsel, presented a question of fact, and was properly submitted to the jury. The first is challenged, and presents the main features of controversy. Keeping clearly in view plaintiff’s contract to procure a meeting of minds upon price and terms, this matter becomes more simple and plain. The question is not one between the parties to the instrument, and cannot be governed by the same rules, in all respects, as would be applicable were this an attempt solely to enforce the contract by either of the parties to it. In the latter case it is quite clear that if it were conceded that the parties signed the indorsement upon the back of the option to take effect as a contract, then its construction would become a question of law for the court to determine, and such construction would determine the rights and liabilities óf the parties. But here the conceded fact is the one in issue, and the question to be determined. The court did not submit to the jury in its charge the question of construction of this contract as determining the rights and liabilities of the respective parties thereto. It submitted it as a piece of evidence in connection with the other evidence in the case, for the jury to determine whether'the minds of the parties had met upon any contract at all, enforceable or otherwisé. The effect of the court’s charge was that, if the parties had agreed, no matter how obscure or indefinite the terms of the contract were, plaintiff was entitled to recover. It is always competent to show by parol testimony that what appears to be a contract is not in fact a contract. Grierson v. Mason, 60 N. Y., 394; Thomas v. Scutt, *587 127 N. Y., 138; 38 St. Rep. 692. And. no reason suggests itself who the contract may not be used for the same purpose if its language tends to its establishment. In the present ease the contract is indefinite in its release clause and provisions for the mortgage, and its final statement is, “Details to be settled later, in conformity to above understanding.” The indorsement did not render in the least degree more certain these provisions, or lessen the force of the final clause. So far as it went, it was plain, for it definitely fixed the price and rate of interest, but it went no further. Plaintiff’s contract related to the conditions in equal degree as to the price. If from this contract, then, it was clearly apparent that there must be future negotiations with respect to its controlling features, and it in express terms reserved such questions for future negotiation between the parties, such facts became pertinent matters for consideration by the jury in determining whether or not the minds of the parties had met upon the terms and conditions of the sale. The oral testimony offered by defendant tended to establish that, not only did Weill reserve the right to withdraw entirely from the transaction, but also that, if he did not so withdraw, a contract was to be then prepared and executed by the parties. It was important testimony bearing upon such proposition whether or not such new contract was necessary, for if the one already in existence was clear, definite, and precise in all its provisions, then it would go far to overthrow such testimony, and tend with much force to establish that there must have been a meeting of minds, for all the terms were agreed upon, and there could be no necessity for another contract. The converse of the proposition is equally true, for in respect to the indefinite features of the writing it tended to support this testimony, and was consequently properly submitted to them for consideration, not for the purpose of construing its terms, and determining legal rights with respect thereto of the parties to it, but for the sole purpose of determining whether the minds of the parties had met upon the terms of a sale, or whether, ■in view of the writing and the oral testimony, they contemplated further negotiations with respect thereto upon which the minds of the parties had not yet met. This is the clear result of all the language used by the court in respect to this question. The learned judge first stated plaintiff’s obligation, and correctly, and he says the principal question is “whether the parties that were brought together agreed or understood between themselyes that there was a perfect contract entered into, or whether they understood that there were terms yet to be fixed-” Then is recited in detail what is claimed by the parties in respect of the contract, and the learned judge, continuing, left to the jury the question “whether it was understood between tfiese contracting parties that the contract was definite, or whether it was understood between them that it was a memorandum concluding them as to the price and certain terms of the sale, but leaving other matters open for further negotiation. In that view this contract would go before you just as the other evidence. It is for your consideration upon the question whether Mr. Folinsbee brought t'o Mr. Sawyer parties who were ready and *588 willing to conclude a sale, or whether these parties did agree upon a sale, or upon the terms of a sale. In this view this contract is mere evidence for your consideration, with the other evidence in this case. If this lawsuit was a lawsuit between Mr. Sawyer as seller and Messrs. Smith and Weill as buyers, the duty might be imposed upon this court to say what the contract means; but this is not a contract directly between the parties to the suit, but is laid hold of as evidence on both sides of the different positions respectively claimed.” The court thus clearly, distinctly, and correctly, as I view the case, specified the purpose of the submission of the contract to the jury, its character as evidence, and the question on which it bore. If the jury found it was signed conditionally by Weill, then it followed that, there was to be some other instrument drawn, for his statement applies equally to both facts, and the necessity for curing the indefiniteness created by the use of the option tended to lend color to the claim. What was the .legal construction of this instrument did not become controlling, for, if it was conditionally executed, plaintiff did not show himself entitled to recover; while, if it was unconditional, and constituted the contract of, sale, plaintiff was entitled to recover, without regard to its legal effect as between the parties to it.
Counsel complains that the court assumed that it devolved upon the plaintiff to show that a complete and perfect contract, of sale was entered into, and, if accepted and signed when it was not complete, that would prevent the plaintiff from recovering any compensation, I do not so read the charge. On the contrary, the court expressly stated that plaintiff wras entitled to recover if he brought the parties together, the owner ready to sell, and the purchaser ready to buy at the owner’s terms. This was nowhere modified or qualified, and, while the court speaks of a completed sale or contract of sale, it was with respect to the claims of the parties regarding the writing, and not in denial of the right of recovery, if plaintiff produced an agreement of mind. I am therefore of the opinion that the court committed no error in the submission of the case to the jury respecting the agreement of sale. But I am of opinion that the .court committed an error respecting the admission of testimony as to other negotiations between other'parties respecting a sale of the property after the execution of the agreement sued upon. It appears from the evidence that, plaintiff did not waive his right to compensation for services rendered by him as agent, as there is no sufficient evidence upon which such claim could be based. Bach v. Emerich, 35 N. Y. Supr. Ct., 548. Plaintiff’s right to recover depended upon the facts attending upon the transactions between the parties to the writing, consequently the evidence of subsequent negotiations between different parties was entirely irrelevant, tended to divert the minds of the jury from the main issue, and inject into the trial an entirely irrelevant one, which might prejudice the minds of the jury to plaintiff’s detriment. This ruling cannot be sustained as tending to show difficulty in agreeing *589 upon details of purchase and showing indefiniteness in the writing. A large part related to the gold clause, in which there was no indefiniteness at all. As we have seen, difficulties attending construction or agreement in detail would not defeat plaintiff’s 'right. Were the parties agreed? was the question, not what they agreed on. What other parties did in trying to .arrange details sheds no light upon that. One party might agree without difficulty, where another would find it impossible. This •evidence was improperly received, and must produce a new trial.
The judgment and order appealed from should be reversed, and a new trial ordered; costs to abide the event.
All concur.