## SULLIVAN v. FRAZIER.

(Supreme Court, Appellate Division, First Department.   May 5, 1899.)

1. CONTRACTS FOR SALE OF LAND—CONSTRUCTION.
   Under a contract to buy land, providing that "if, for any reason," the buyer declines to take title, the seller shall pay expense for examining the title, and the contract shall be abrogated, the buyer can refuse to buy only on reasonable grounds.

2. REAL-ESTATE AGENTS—COMMISSIONS—WHEN EARNED.
   An agent earns his commission for negotiating a sale of land, where he procures a purchaser who makes an enforceable contract to buy the land, though the contract is subsequently abandoned by the parties.
   Rumsey and Ingraham, JJ., dissenting.

Appeal from trial term, New York county.

Action by Maurice J. Sullivan against Thomas Frazier. From a judgment dismissing the action, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

William L. Snyder, for appellant.

P. Mitchell, for respondent.

BARRETT, J. This action was to recover a broker's commission for procuring the defendant a purchaser of certain lots on the Boulevard, in the city of New York. In December, 1895, the plaintiff, who is a real-estate broker, had a conversation with the defendant's attorney, Mitchell, in the defendant's presence. This conversation was in Mitchell's office. The plaintiff said that his party—the proposed purchaser—had made an offer of $125,000 for the lots. Mitchell refused to accept this offer, and the defendant concurred in the refusal. The plaintiff then said that he would try and get a better offer. Subsequently he met Mitchell, and told him that he might be able to get $130,000 for the property, to which Mitchell replied, "You get me an offer of $130,000, and your commission is made." The plaintiff did get this offer, and he then notified Mitchell of the fact. The offer was entirely satisfactory to Mitchell, and accordingly the parties (Crawford and the plaintiff) met in Mitchell's office, where Crawford said, in substance, that he was ready to purchase the lots for $130,-000. Crawford and Mitchell then agreed upon the terms, and it was arranged that the contract should be signed the same afternoon, at 2 o'clock, in the office of Crawford's lawyer, Fettretch. All the parties, including the defendant, accordingly attended at Fettretch's office. There the contract was drawn. It was so drawn under Fettretch's direction. The transaction took place in Fettretch's private room, with the door closed, while the plaintiff awaited its consummation in an outer room. The contract was then and there signed by Crawford and the defendant, and Crawford paid $2,500 upon account, as specified in the instrument. The plaintiff knew nothing of the terms of the contract. He only knew that a contract had been signed, and the transaction consummated. Thereupon, before the parties left Fettretch's office, he asked for his commission, and was told that he would have to wait until the seller got some money. The fact was that at this time the defendant had Crawford's check for the $2,500. The contract provided for the delivery of the deed on the 28th day of January, 1896, at Fettretch's office. Crawford was then to pay an additional sum of $12,500 in cash, and the balance of the purchase money ($115,000) by taking the premises subject to mortgages to that amount. Upon the day fixed for closing the transaction, Crawford attended at Fettretch's office, prepared to complete. He had with him a certified check for the $12,500. He, however, did not take title,—why, it is difficult to ascertain from anything appearing in this record. He says he was ready and prepared, and that he asked for no delay; but he says vaguely, "There was some land." We quote what follows:

"Q. The Bloomingdale Road? A. Yes, sir; the Bloomingdale road. Q. You had heard about the Bloomingdale road before? A. Yes, sir; I think so. Q.

57 N.Y.S.—64

You knew at the time that contract was signed the Bloomingdale road ran through it? A. Yes, sir. Q. You and I ["I" being Mitchell, who was cross-examining] had quite a discussion before you signed the contract. A. Yes, sir. Q. As a matter of fact, you owned some property below that, where the Bloomingdale road touches it? A. Yes, sir. Q. That was the reason why it was suggested here in this agreement that, if your counsel objected to the title, you would have a right to refuse to take it? Is that the reason why you declined to take it? A. I did, sir."

We have quoted every word in the record with regard to the failure to take title. All that can be gleaned from it is that possibly Crawford declined to close the purchase because his counsel objected to the title, owing to some considerations with regard to the Bloomingdale road. The contract of sale contained the following provision:

"If, for any reason, the party of the second part declines to take title to said property at the maturity of this contract, the party of the first part shall pay expense for examining title, and this contract shall be abrogated, and neither party shall claim any damages against the other on account of such refusal, and the twenty-five hundred dollars paid by the party of the second part shall be refunded to him without deduction." .

The complaint was dismissed substantially upon the ground that this provision effected a mere option, and that consequently there was no binding contract of sale. The appellant contends that the provision in question does not give the purchaser a mere option, that Crawford agreed to purchase upon certain definite terms, and that the right to rescind was not absolute, but depended upon the existence of some reasonable objection to the title, made in good faith. He also contends that, having secured a purchaser who was ready, willing, and able to buy upon the defendant's terms, and to contract therefor, he became entitled to his commission, regardless of any special covenants which the parties chose to insert in the contract.

As to the first point, we agree with the appellant that the provision in question did not turn the contract of sale into a mere option. The defendant asks us to construe the opening words of the provision, "If, for any reason," in their strict, literal sense; that is, as though it read, "If, for any reason that I may deem good," or "any reason, good, bad, or indifferent." Plainly, this is not what the parties meant. It will be observed that upon Crawford's declination, "for any reason," Frazier is to pay the expense of examining the title. Can it be that the parties meant that, upon Crawford's mere capricious refusal to complete, Frazier was to pay his (Crawford's) lawyer for examining the title? Such a construction would attribute mental weakness to Frazier, while it would be a reflection upon his counsel; for it will be remembered that Mitchell was present, as Frazier's legal adviser, when the contract was prepared and signed. That the parties never understood the words in question as turning the previous fully-detailed contract of sale into a mere option is evidenced by Mitchell's last question to Crawford upon the cross-examination already quoted. How was it so "suggested" in the agreement that, if Crawford's counsel objected to the title, he would have a right to refuse to take it? Only by the phrase, "If, for any reason," he declines to take. Crawford's counsel could not object to the title capriciously or unreasonably. He could only advise his client to decline on reasonable grounds. If the title was good, he was bound to be satisfied with it,

and so was his client. "A simple allegation of dissatisfaction," as Chief Justice Kent said in Folliard v. Wallace, 2 Johns. 402, "without some good reason assigned for it, might be a mere pretext, and cannot be regarded." This was not a contract to gratify taste, serve personal convenience, or satisfy individual preference. It presents, as did the contract in Boiler Co. v. Garden, 101 N. Y. 390, 4 N. E. 749, "a different case,"—a case for the application of the principle that "that which the law will say a contracting party ought in reason to be satisfied with, that the law will say he is satisfied with." The fair construction of the provision in question is that it required Frazier to pay Crawford's expense of searching the title only in case the latter declined to complete in good faith, and upon some reasonable ground. A declination to complete upon reasonable grounds was the consideration, and the only possible consideration, for Frazier's promise to pay the expenses of searching the title. And would it not have been childish to prepare a full and detailed contract of purchase and sale, and to require $2,500 to be paid upon account of the purchase money, with an addendum that all this should come to naught at the purchaser's mere pleasure? And would it not have been worse than childish to further add that upon the expression of that mere pleasure the seller should be charged with the particular loss thereby occasioned to the purchaser? If the intention had been to confer a naked option, it would have been easy to say so, and to say so in fewer, simpler, and more direct words than those here employed. Such an option would at least have called for a consideration on Crawford's part. The defendant's contention here seems to be that there was an option upon no consideration whatever. What was Crawford to give for the privilege of buying? Not the $2,500, for that was to be returned to him, "without deduction," in case he decided not to buy. Not his own promise to purchase, for in this view he made no binding promise to purchase. Not even the expense to which he might be put for having the title searched, for that was to be paid by Frazier. Upon the defendant's construction, therefore, this was an idle and wholly unilateral agreement. We do not thus read it. It was rather in all respects a valid and enforceable contract of purchase and sale. The provision in question was reasonable and sensible, and it did not detract from the validity and enforceability of the contract. Its plain intention was to provide for the possibility of Crawford's declining to take title upon reasonable grounds, and thereupon to limit with certainty his claim for damages against Frazier. The use of the word "reason" emphasizes this construction. It is not for any whim or caprice, or at mere pleasure, that Crawford, after holding Frazier and his property bound for upwards of a month, may decline to take title. The latter consequence plainly attaches only to a declination upon reasonable grounds; that is, for any reason founded upon such reasonable grounds. We think, therefore, that the plaintiff, having found a purchaser who was ready, willing, and able to enter into, and who did enter into, a valid and enforceable agreement for the purchase of the property, became entitled to his commission when this contract was executed. Kalley v. Baker, 132 N. Y. 1, 29 N. E. 1091; Duclos v. Cunningham, 102 N. Y. 678, 6 N. E. 790; Condict v. Cowdrey, 139

N. Y. 273, 34 N. E. 781. He brought Crawford to Frazier, not to obtain an option, but to make a contract of sale upon Frazier's terms. That was what Crawford proposed and intended to do, and that is what he did do. How this particular provision came to be ingrafted upon the contract, the record does not disclose. We cannot indulge any presumption upon that subject. The provision was seemingly satisfactory to both parties. It cannot be said that either party refused to contract unless that provision was inserted in the instrument. At all events, the plaintiff was informed that a satisfactory contract of sale had been executed. What more could he do? He brought a purchaser to the defendant to contract upon the latter's terms. The parties entered the lawyer's room to prepare and sign such a contract, and when they came out the plaintiff was informed, as was the fact, that a contract satisfactory to the defendant had been signed, and the matter, so far as the plaintiff was concerned, closed.

We think, therefore, that the nonsuit was erroneous, and that the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and McLAUGHLIN, J., concur.

RUMSEY, J. I think this judgment should be affirmed. To entitle the plaintiff to recover, it is not sufficient that he should show a provisional agreement, which has failed because of a condition not dependent upon the action of the vendor, but a binding and enforceable contract for the sale and conveyance of the land must be proved. Condict v. Cowdrey, 139 N. Y. 273, 34 N. E. 781. The alleged agreement upon which the plaintiff relies is set out in the record. It contains a provision that if, "for any reason, the party of the second part declines to take title to said property at the maturity of this contract, the party of the first part shall pay expense for examining title, and this contract shall be abrogated, and neither party shall claim any other damages against the other on account of such refusal; and the $2,500 paid by the party of the second part shall be refunded to him, without deduction." The words of that provision are broad enough to permit the purchaser to refuse to take the property, if he desires, and to make his desire a sufficient reason. The actions of the parties to the transaction show clearly that that was their understanding of its meaning, because, while it appears that the party of the second part went to the office of the attorneys, on the day fixed for the completion of the contract, with the money to make the cash payment, he changed his mind about the advisability of it, and declined to complete the contract, and that his declination was acquiesced in, and the contract abrogated; and no legal reason appears, or was given, or was suggested to exist, why that was done. There was no pretense of proving that the title was invalid, but the refusal of the proposed purchaser to carry out the contract was acquiesced in without objection. If contracts are to be construed according to the intention of the parties, I cannot conceive of more cogent evidence as to what was the intentio:

of the parties in regard to this contract than that shown by their acts in thus abrogating it. It must be remembered that there is no question of estoppel in the case. How this contract came to be made is a matter of no importance. It was presumably the contract which the purchaser desired, and it was the arrangement that was made between the parties. No representations were made to the plaintiff which would estop the defendant from insisting that the paper was precisely what the actions of the parties showed it to be; and the only question presented is whether the plaintiff bore the burden which the law puts upon him, of showing that by his means an enforceable contract of sale had been entered into. It may be that the arrangement was a foolish one. It may be that, because of a lack of consideration, it was not a contract at all. But if it was no contract at all, the plaintiff is in no better case, because, unless there was a contract, he cannot recover commissions. The result of the whole paper was that there was a conditional arrangement for a sale of the property, subject to be abrogated if the purchaser saw fit; and the parties provided as to what their relative situations should be, if the purchaser did see fit to put an end to it. It is not possible, as it seems to me, that such a paper as this should be said to contain an enforceable contract of sale which would entitle a broker to his commissions.

But if my construction of the paper is not correct, and it is to be construed as a contract with a privilege to the party of the second part to abrogate it, if he finds a good reason to do it, and not otherwise, nevertheless the plaintiff has no cause of action for his commissions in case the contract is actually abrogated. The case is precisely within that of Condict v. Cowdrey, 123 N. Y. 463, 25 N. E. 946; Id., 139 N. Y. 273, 34 N. E. 781. In that case, as it was made to appear when reported in 133 N. Y., 25 N. E., there was upon the papers an actual contract of sale, which entitled the plaintiff to his commissions, and that contract was partly carried into effect. But the defendant offered to show by parol that the purchasers "were not willing to pay for the land until they had searched the title, and to give them that opportunity the cash purchase was deferred, as specified in the notes, upon the express agreement that the deeds and the notes should be placed in escrow till such time as they might be able to be satisfied as to the title, and, if the title was satisfactory, they would pay the paper and take the deeds. Those were the terms of the transaction." In regard to that the court says:

"If this evidence is true, the alleged vendees never bound themselves to take the land, but preserved their freedom to refuse; and the acceptances * * * were so much waste paper, and incapable of being enforced."

The case was sent back for a new trial because of the refusal of the court to receive that parol evidence, and afterwards, upon a second trial, it was made to appear that the defendant was willing to take the title, provided the deeds shown to him were in accordance with the abstract; that the deeds were not in accordance with the abstract, and it was understood that, if they were not,

the contract was off, and no liability rested upon either party. 139 N. Y. 273, 34 N. E. 781. That is precisely this case. Even upon the construction which the plaintiff claims must be given to this contract, it was conditional upon the title being satisfactory to the vendee; and if that title was not satisfactory, or if, for any other reason, he did not see fit to carry the contract into effect, he could not be compelled to do so, and by its express terms the contract was at an end. I am utterly unable to see any distinction between this case and the case of Condict v. Cowdrey, and for that reason it seems to me that the plaintiff cannot maintain his action, and the judgment should be affirmed.

INGRAHAM, J., concurs.