BACKER v. RATKOWSKY.

(Supreme Court, Appellate Division, First Department.   April 8, 1910.)

1. Brokers (§ 54*)—Commissions—Procuring Purchaser.

A broker, to be entitled to commissions for the sale of real property, must produce a purchaser ready and willing to enter into a contract on the employer's terms, and, until the broker has faithfully discharged the obligation assumed in his contract with the principal, he is not entitled to his agreed commission.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 75–81; Dec. Dig. § 54.*]

2. Brokers (§ 86*) — Commissions — Procuring Purchaser—Sufficiency of Evidence.

In an action for commissions of a broker employed to exchange property, evidence *held* insufficient to show that the broker's customer was in a position to comply with the terms required by the employer so as to entitle the broker to commissions on the deal falling through.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 116–120; Dec. Dig. § 86.*]

3. Brokers (§ 64*)—Exchange of Property—Right to Commissions.

Where, on an exchange of properties of unequal values, the only terms that had been agreed on were that, if mortgages of certain amount were secured, the deal could go through, the mere expression of an opinion, on the part of an employer of the broker securing the customer, that he was satisfied with the terms made by the customer, is not such an acceptance as bound him to make a contract, even though the customer could not get mortgages to that amount so as to entitle the broker to compensation on the deal falling through.

[Ed. Note.—For other cases, see Brokers, Dec. Dig. § 64.*]

Laughlin and Miller, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by George. Backer against Bernard Ratkowsky. From a judgment for plaintiff and from an order denying a motion for new trial, defendant appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, MILLER, and DOWLING, JJ.

Jacob Manheim, for appellant.
Louis Salant, for respondent.

INGRAHAM, P. J.   This action was to recover for services rendered by the plaintiff for the defendant; the complaint alleging that the plaintiff and one Markowitz procured a proposition to trade certain real property situated on Ninetieth and Ninety-First streets and Central Park West for certain real property on the easterly side of Gramercy Park in the city of New York in which said premises the defendant had an interest, and that Markowitz had assigned his claim against the defendant to the plaintiff. The defendant denies the allegations of the complaint, except that he admits that in May, 1905, he was one of the owners of a plot of ground on the easterly side of Gramercy Park in the city of New York.

On the trial the plaintiff testified: That he was a real estate broker and knew the defendant. That between February and April, 1905, he

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

had a conversation with the defendant, in which the defendant said that his Gramercy Park property did not produce anything, and he would like to change it for something that was productive. That he wanted nothing but high-class property, elevator apartments, house to be of fireproof construction, and that if the plaintiff succeeded in this he would pay him 1 per cent. commission. After this conversation plaintiff submitted several pieces of property to the defendant which the defendant declined, when the plaintiff said to the defendant that he would not do any more business with him. That the defendant again proposed to the plaintiff to do what he called "business," and said, "No matter who makes the deal, I will ring you in on the commission." That after this the plaintiff submitted to the defendant a building called the El Dorado, an apartment house on Ninety-First street and Central Park West, which defendant went to see and stated that it was just what he wanted. This El Dorado apartment house was owned by one Signell. Signell wanted for the El Dorado $1,-250,000, but finally came down to $1,200,000, offering to pay $175,-000 for the Gramercy Park property. The El Dorado was subject to several mortgages, the amounts of which are not stated. Signell told the defendant that he was offered a mortgage of $800,000, but was pretty sure he could get $900,000. Signell then said he would take the equity in the Gramercy Park property at $100,000, the defendant to pay $25,000 on the execution of the contract, $25,000 on taking title, and $50,000 in the defendant's note secured by a mortgage, and a mortgage of $100,000, on the El Dorado, payable $20,000 each year. There was also to be an additional mortgage if Signell could not get more than $800,000 on the mortgages. Plaintiff testified that both parties were satisfied with this proposition. After they had all talked it over, the defendant said he would have his lawyer, a Mr. Rogers, at the office of Signell's lawyer the next day, when they could sign the contract. The next day the plaintiff and Mr. Rogers were present at Mr. Weschler's office; but the defendant did not appear, and the transaction was postponed for four days. The plaintiff claimed a commission on the Gramercy Park property which was to be taken by Signell of $1,750. On cross-examination the plaintiff testified that he had an agreement with Signell to have 1 per cent. on the price fixed for the El Dorado property of $1,200,000, which commission would be $12,000, if the deal went through. Plaintiff further testified that he had some conversation with the defendant as to his arrangement to get the $12,000 commission from Signell, but does not state when this conversation took place.

Signell, the owner of the El Dorado, was called as a witness by the plaintiff, and testified that he met the defendant, who said there was a $75,000 mortgage on the Gramercy Park property and the balance was equity; that he told the defendant that the mortgages were not then placed on his buildings, but negotiations were pending for placing mortgages; that he was trying to get $450,000 on each corner making a total of $900,000, in all, but if he could not place that amount he was going to take $400,000. Signell stated the terms of the proposition substantially as the plaintiff, and that these terms were talked over between the witness and the defendant and were satisfac-

tory to the witness; that they agreed upon everything; that the defendant said his attorney would be Mr. Rogers, and they were to meet at Mr. Weschler's office on the following day; that defendant did not appear at this meeting, and it was subsequently stated that the contract was off; that about a month after this conversation with the defendant he actually got a mortgage of $400,000 on each building for five years, and at the same time he placed two other mortgages on the property amounting to $100,000.

On behalf of the defendant, testimony was offered that, while the parties negotiated about the purchase of this building, it was all dependent upon the amount of the mortgages that Signell could get, and that the defendant expressly said that it would be quite impossible for him to pay any considerable amount in cash at that time. Mr. Rogers, the attorney who appeared at the office the day after this conversation, testified that he was a relative of the defendant; that he had no recollection of being at the lawyer's office at the time and had no recollection of the transaction at all. The defendant had testified that Signell telephoned to him that the deal was off because he (Signell) could not get the mortgages that were contemplated. Signell was recalled, but testified that he had no recollection of having sent such a message to the defendant; that he did not know positively whether he telephoned him or not; that he could not tell. At the end of all the testimony, the defendant made a motion to dismiss the complaint, which was denied, and the defendant excepted. The court then charged the jury that if the plaintiff did produce a man who was willing to exchange his property for the defendant's Gramercy Park property who agreed with defendant's terms so that both parties were satisfied, and there was nothing left to do to carry out this contract which existed verbally between them except to sign the papers, then plaintiff was entitled to his commission. There was no exception to this charge and no requests to charge by either party.

The only question presented is whether this verdict was sustained by the evidence, and I am inclined to think it was not. The plaintiff was required to produce a man who was willing to exchange his property for the defendant's Gramercy Park property upon terms to which the defendant would agree. It is quite evident that he did not procure a man who was able and willing to make such an exchange. The defendant owned a piece of property valued at $175,000, which was subject to a mortgage of $75,000. The customer that plaintiff produced was to convey an apartment house for $1,200,000 subject to a mortgage of $900,000; defendant to give additional mortgages of $100,000, was to pay $50,000 in cash and $55,000 in notes, which were also to be secured by a mortgage upon the property. It is quite clear that the purchaser procured by the plaintiff was not at the time of the negotiations able to convey the property subject to this mortgage. He had not secured the $900,000 mortgage upon the property, and he never did secure that mortgage. It is true that condition was discussed, and it was understood that the defendant was to give an additional mortgage of $100,000 if Signell was unable to obtain a mortgage for more than $800,000, but is quite clear that there were

no definite terms fixed upon which the properties could be exchanged. It was still a tentative proposition which had not been positively accepted by either party and which either party was entitled to refuse to carry out. There is testimony that it was the customer procured by the plaintiff who stated to the defendant that the deal was off, and that customer, when called, would not contradict that statement. Taking the whole testimony together, it seems to me that it is impossible to say that any definite arrangement was arrived at so that it could be said that the plaintiff procured a customer who was ready and willing to carry out the exchange upon the defendant's terms. Thus, upon well-settled principles of law, plaintiff was not entitled to recover. Signell was not as a matter of fact able to carry out this contract or ready to make a contract upon the terms proposed, as he did not have mortgages on his property for either $800,000 or $900,000. The condition which must exist to impose an obligation upon an owner of property to pay commissions to a broker for its sale is that the broker must produce a purchaser ready and willing to enter into a contract on the employer's terms (Wylie v. Marine Nat. Bank, 61 N. Y. 416), and, until the broker has faithfully discharged the obligation assumed in his contract with the principal, he is not entitled to his agreed commissions, and that obligation is completed only when he produces a party ready to make the purchase at a satisfactory price. Moses v. Bierling, 31 N. Y. 462. The fundamental and correct doctrine is that the duty assumed by the broker is to get the minds of the buyer and seller together for a sale and the price and terms upon which it is to be made, and until that is done his right to commissions does not accrue. Sibbald v. Bethlehem Iron Works, 83 N. Y. 382, 38 Am. Rep. 441. It was further said, in this latter case:

"It follows, as a necessary deduction from the established rule, that a broker is never entitled to commissions for unsuccessful efforts. The risk of failure is wholly his. The reward comes only with his success. That is the plain contract and contemplation of the parties. The broker may devote his time and labor, and expend his money with ever so much of devotion to the interests of his employer, and yet if he fails, if, without effecting an agreement or accomplishing a bargain, he abandons the effort, or his authority is fairly and in good faith terminated, he gains no right to commissions. He loses the labor and effort which was staked upon success."

In the late case of Mutchnick v. Davis, 130 App. Div. 417, 114 N. Y. Supp. 997, the rule is stated:

"In an action by a broker to recover commissions upon a proposed exchange of real property, it is necessary for him to show that the customer produced by him was the owner of the property offered to be exchanged, as well as that after the terms of the exchange had been agreed upon the client refused to carry them out."

And, of course, having a good title to the property includes that it was subject to such incumbrances as would enable the customer produced to carry out the contract as it was proposed by the defendant. A person is not bound to enter into a contract which the other party to the contract is not then able to perform, merely because the other party expects to be able or is willing to obligate himself to perform. It seems to me there must be presented, to entitle a broker to commissions, a customer who is capable of carrying out the contract at the

time that it is proposed that one be executed. The obligation to be assumed by this defendant in carrying through this contract was a very heavy one. He had to become liable for a very large sum of money besides losing his property in which he apparently had a conceded equity of $100,000. It would seem to be entirely unjust to subject a party to the penalty of being compelled to either execute a contract which it did not appear the other party was able to carry out or make himself liable for broker's commissions as if the broker had produced a customer who was not able to carry out such a contract. This is not a case where the plaintiff produced a customer with whom a contract was ultimately concluded, nor is it a case where the plaintiff was employed to produce a customer who was willing to pay a cash price for the property. The proposition here was for an exchange of property, the success of which depended upon the character of the property offered in exchange for the defendant's property and a satisfactory arrangement being made about the amount of money to be actually paid.

It seems to be undisputed that the defendant had said that he was not able to pay any considerable amount of money on the execution of the contract of exchange. The property which the plaintiff proposed to the defendant as an exchange was valued at $1,200,000, while all the defendant had to offer was this equity in the Gramercy Park property of $100,000. The method by which the difference of $1,100,-000 was to be provided for required considerable manipulation, in view of the fact that the defendant was unable to pay any considerable amount in cash. The means by which this was to be accomplished were discussed, and it may be that the defendant had expressed himself as satisfied with the proposition made by the customer produced by the plaintiff; but I do not think it can fairly be said that the mere expression of such satisfaction was such an acceptance of the proposed customer produced by the plaintiff as bound the defendant to make the contract or rendered him liable to pay the plaintiff's commission for such a transaction if for any reason the subsequent negotiations fell through and no contract of exchange was made. It seems to me from the undisputed evidence that this is a case in which there was an unsuccessful effort of the plaintiff to procure a customer who could carry out a contract of exchange upon the defendant's terms, and as no such exchange was actually made, and no services were rendered that were of the slightest value to the defendant, the finding that the plaintiff performed the conditions which would entitle him to recover commissions was not sustained by the evidence.

For that reason the judgment and order appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event.

McLAUGHLIN and DOWLING, JJ., concur.

LAUGHLIN, J. (dissenting). I am of opinion that the verdict upon which the judgment was entered herein is fairly supported by a preponderance of the evidence. According to the testimony of the plaintiff and of a disinterested witness, one Signell, who owned the El Dorado apartment house on Central Park West, with whom defend-

ant, through the plaintiff, had negotiations for the exchange of said apartment house for a parcel of land represented as owned by defendant on Gramercy Park, the minds of the parties met with respect to all of the terms of the exchange of their properties, and it was agreed that they should meet at a specified hour on the following day in the office of the attorney for Signell and execute a formal contract for such exchange, and the defendant agreed to and did have his attorney, one Rogers, there, but defaulted in appearing personally, as agreed, and failed to consummate the contract. The testimony of these witnesses upon the material point that an agreement was reached with respect to all of the terms of the exchange of the properties is flatly controverted by the testimony of the defendant and one Simon, who was interested on account of being a tenant in common with the defendant of an undivided half of the Gramercy Park property and was also the defendant's brother-in-law. With respect to the parties all having met in the office of Signell's attorney, pursuant to appointment, to execute the formal contract, Signell's attorney testifies unqualifiedly to the presence of Rogers, claiming to appear for and to represent the defendant, and that they went over a draft of contract together and agreed upon certain changes and alterations, and that, defendant failing to appear, Rogers took the draft of the contract away with him and later notified the witness that the "deal negotiations was off." Rogers does not positively deny that he was in the office of Signell's attorney to represent the defendant, or that he examined or approved the contract, as the other parties present testified. He merely says, in effect, that he has no recollection of it, and that he thinks he would have made an entry on his diary, had he been there, and he finds none. He was distantly related to the defendant.

We have thus presented a case with three witnesses on each side, and all on one side related and two of them interested. The testimony of the witnesses that they met in the office of the attorney for Signell pursuant to appointment, for the purpose of signing a formal agreement pursuant to the terms of exchange upon which the minds of the parties had met, is positive, and there is no escape from the conclusion that it is either true, or all of those witnesses have committed perjury. The defendant and Simon deny that there was any understanding with respect to a meeting at the lawyer's office or with respect to the execution of a contract. It is, of course, possible that they might innocently be mistaken; but it is highly probable that, if there was an understanding to meet at the attorney's office, they must have recalled it, and in denying it deliberately committed perjury. The testimony of Rogers that he had no recollection of being in the office of the attorney for Signell is not entitled to the same weight as the positive testimony of the witnesses to the effect that he was there, and who related what he said and did. If the testimony of the defendant and of his witnesses to the effect that there was no arrangement to meet in the attorney's office be not true, then the testimony adduced in behalf of the plaintiff, to the effect that the minds of the parties had met upon all of the terms of the agreement, is materially strengthened, because the testimony controverting it is decidedly weakened. In these circumstances,

and with no other probability to aid either side, the question necessarily depending, not upon whether witnesses are merely mistaken, but upon which witnesses have committed perjury, I am of opinion that the verdict of the jury ought not to be disturbed.

The defendant was desirous of exchanging the Gramercy Park property for improved property, and employed the plaintiff as a broker, upon an agreed commission, to find a customer with whom the exchange might be made upon terms to be agreed upon. Plaintiff, according to the evidence to which reference has been made, showed that he procured a customer with whom the defendant agreed upon all of the terms for the exchange of their respective properties, and he further sufficiently showed that, pursuant to appointment, the customer was present, ready, willing, and able to execute the contract and to perform it, but that the defendant defaulted. In these circumstances, the broker became entitled to his commissions. Folinsbee v. Sawyer, 8 Misc. Rep. 370, 28 N. Y. Supp. 698; Baumann v. Nevins, 52 App. Div. 290, 65 N. Y. Supp. 84; Woolley v. Lowenstein, 83 Hun, 155, 31 N. Y. Supp. 570; Suydam v. Healy, 93 App. Div. 396, 87 N. Y. Supp. 669; Cody v. Dempsey, 86 App. Div. 335, 83 N. Y. Supp. 899.

I therefore vote for affirmance.

MILLER, J., concurs.