### KUTYN et al. v. SANDROVITZ.

(Supreme Court, Appellate Term. February 8, 1912.)

BROKERS (§ 48*)—COMPENSATION—WHEN EARNED.

> Where an owner agreed to pay a broker a specified sum for selling his business, and the broker produced a purchaser ready and willing to buy on terms agreed on with the owner, evidenced by a written agreement, signed by them, constituting a complete contract of purchase, leaving only the delivery of a bill of sale at a subsequent date, the broker had earned his compensation.

> [Ed. Note.—For other cases, see Brokers, Dec. Dig. § 48.*]

Appeal from City Court of New York, Trial Term.

Action by Paul Kutyn and another against Bernard Sandrovitz. From a judgment of dismissal, plaintiffs appeal. Reversed, and new trial ordered.

Argued January term, 1912, before SEABURY, GERARD, and HOTCHKISS, JJ.

David Kornblueh, for appellants.

Leopold Freiman, for respondent.

GERARD, J. This is an appeal from a judgment dismissing the complaint. The defendant, desiring to sell his business, employed plaintiffs as brokers under the following written authority:

"I, the undersigned, agree to pay Kutyn and Hausen the sum of $500.00 (five hundred dollars) for selling my business.    B. Sandrovitz."

The plaintiffs produced a purchaser, who was ready and willing to buy on certain terms, agreed on between the said purchaser and the defendant, and these terms were incorporated in a written agreement, signed by purchaser and defendant, in and by which the purchaser agreed to buy defendant's business. The only thing left to be done under the agreement was that a bill of sale of the business was to be drawn by a lawyer on July 31, 1911. This agreement was as follows:

"New York, July 29, 1911.

"Between Bernard B. Sandrovitz, under the firm the Columbia Bottling Works Co., and Marcus A. Fielding and Samuel Wolf Gawron, is made a

sale, or bill of sale, where the bill of sale should be made out by a lawyer, Monday, July 31, 1911. Mr. Bernard B. Sandrovitz sells his business to Marcus A. Fielding and Samuel Gawron, including (8) eight horses, (6) six wagons, all harnesses, all machinery, engine, and everything belonging to the place, on 734 E. 6th St.; all boxes outside and inside; all bottles outside and inside; all stocks, as corks, stoppers, labels; all sugars, extracts, oils, and everything what belongs to manufacturing the waters; also he sells his lease with security, what he has by the landlord, until May 1, 1913, for dollars six thousand and five hundred ($6,500). On the 31st of July, 1911, Marcus A. Fielding and Samuel W. Gawron agree to pay dollars two thousand ($2,000) to Mr. B. Sandrovitz; balance of four thousand and five hundred in payments as a mortgage on the place for dollars four thousand and five hundred, without interest:

| | | |
|---|---|---|
| Dollars five hundred ($500) | ...................... | August 15, 1911. |
| Dollars five hundred ($500) | ...................... | February 1, 1912. |
| Dollars five hundred ($500) | ...................... | August 1, 1912. |
| Dollars five hundred ($500) | ...................... | February 1, 1913. |
| Dollars five hundred ($500) | ...................... | August 1, 1913. |
| Dollars five hundred ($500) | ...................... | February 1, 1914. |
| Dollars five hundred ($500) | ...................... | August 1, 1914. |
| Dollars five hundred ($500) | ...................... | February 1, 1915. |
| Dollars five hundred ($500) | ...................... | August 1, 1915. |

"Mr. Bernard B. Sandrovitz agree and assume not to be in the bottling business in New York, not even for a manager by somebody else, for the term of five years. Mr. Bernard Sandrovitz agrees to stay in business for three weeks, in order to give them all necessary information.

"Mr. Marcus Fielding and S. W. Gawron agree to pay to Mr. B. Sandrovitz dollars one hundred ($100) on the August 15, 1911, for Mr. B. Sandrovitz is not responsible for the bottles and boxes outside, and Mr. B. Sandrovitz has to deliver the business free and clear from all. The fitters don't belong to the place.                Bernard B. Sandrovitz.

"Marcus S. Fielding.

"July 29, 1911.                                   S. W. Gawron."

The question of law involved is the construction of the memorandum, by which defendant authorized plaintiff to sell his business. Is the broker entitled to his commission when he produced a purchaser, who entered into a binding contract of sale, or does his commission depend upon whether the sale was actually made? In Gilder v. David, 137 N. Y. at page 504, 33 N. E. 599, 20 L. R. A. 398, the general rule is stated as follows:

"Where the contract of sale is executed between the employer and the purchaser, the right of the broker to his commissions does not depend upon the performance of the contract by the purchaser."

The agreement in question was a complete contract of purchase. The only thing left to be done was the delivery of a bill of sale at a subsequent date, equivalent to the delivery of a deed in a contract for the purchase of real estate. In the case of Condict v. Cowdrey, 139 N. Y. 273, 34 N. E. 781, cited by the defendant, the contract with the broker was as follows:

"I hereby agree to pay a commission of 10 per cent. on the price I may accept for land in Kentucky belonging to me if sold through your agency."

And it was held in that case that the broker could not recover, because there was no binding and enforceable agreement for the sale and conveyance of the land; but in the case at bar the parties entered into a binding and enforceable agreement, under which nothing fur-

ther was left to be done, other than to deliver a bill of sale of the articles specified in the agreement.

I think that the complaint should not have been dismissed, and that the judgment should be reversed, and a new trial ordered, with costs to the appellants to abide the event. All concur.