ARNOLD v. SCHMEIDLER et al.

(Supreme Court, Appellate Division, First Department. May 12, 1911.)

1. BROKERS (§ 85*)—ACTION FOR COMPENSATION—EVIDENCE.

Where a real estate broker suing for commissions claimed that the customer produced was ready, able, and willing to buy on the conditions fixed by defendants, who sought to show the broker's knowledge of an additional condition with which the customer in question and a prior customer refused to comply, it was error to exclude testimony showing all the negotiations with both customers in the broker's presence and the proposed contracts with the customers submitted to them by defendants during such negotiations.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 106–115; Dec. Dig. § 85.*]

2. BROKERS (§§ 52, 54, 64*)—COMPENSATION—SUFFICIENCY OF SERVICES.

A broker to whom an owner has given full terms of sale earns his commissions by producing a customer ready, willing, and able to buy on such terms, and, if additional conditions are imposed by the owner, they must be germane to the original ones if they are to furnish sufficient reason for refusal to pay the broker in case the customer refuses to agree to any modification of the original terms; but where the owner has merely fixed the price, leaving the terms of sale to be determined, the commissions are earned when the customer reaches an agreement with the owner as to the terms of sale, though the agreement is not reduced to writing and signed by the parties.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 73, 75–81, 97; Dec. Dig. §§ 52, 54, 64.*]

Appeal from Appellate Term.

Action by Aaron Arnold against Leopold Schmeidler and others. From a judgment of the Appellate Term, affirming a judgment of the City Court in favor of the plaintiff, defendants appeal. Reversed.

See, also, 127 N. Y. Supp. 1109.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, MILLER, and DOWLING, JJ.

Nathaniel Cohen, for appellants.

M. Spencer Bevins, for respondent.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

DOWLING, J. The cause of action upon which plaintiff has recovered herein is based upon allegations that in February, 1909, defendants, who were owners of premises known as Nos. 10, 12, 14, 16, 18 West 110th street, in the borough of Manhattan, city of New York, authorized and employed the plaintiff and one Harrison, real estate brokers, "to find for them a person or persons ready, able, and willing to buy the said five lots and houses thereon or any one or more thereof, upon certain terms and conditions," and agreed to pay the brokers a commission of 1 per cent. for their services; that thereafter the plaintiff and Harrison "procured a person ready, able and willing to buy four of the said houses at the price of $28,375 for each thereof, which price was satisfactory and acceptable to the defendants, and upon the terms and conditions acceptable to them, which person thereupon offered to purchase the said four houses at the price and upon the terms and conditions aforesaid, yet defendants thereupon refused to consummate the transaction"; that demand has been duly made for the payment of the commissions claimed to be due, but no part thereof has been paid; and that Harrison has assigned all his interest therein to the plaintiff. The answer was a general denial. The testimony on behalf of the plaintiff disclosed that in the course of a business call upon the defendants, Harrison, plaintiff's assignor, there saw a list of properties which they had for sale, and upon which appeared the five houses in question, listed at an aggregate asking price of $165,000, subject to mortgages aggregating $137,500; the four parcels ultimately claimed to have been sold, Nos. 12, 14, 16, 18 West 110th street being listed at an aggregate price of $133,000, subject to mortgages amounting to $110,000.

The defendants are then claimed to have told Harrison that they thought he would sell the houses very easily and asked him to take the list, to which Harrison replied that it was impossible to sell at the prices asked, whereupon one of the defendants answered, "Never mind the price. If you get a man, let me know." Harrison claims that he had interested a prospective purchaser, but they could not agree on conditions, and so the deal was off. He then met Arnold, the plaintiff, and asked him if he could interest some one in the matter, in response to which Arnold finally produced one Purtman as a purchaser, upon whom Harrison called with Arnold. They had a conference, as the result of which Purtman offered a second mortgage of $5,500 on property in Madison street, in this city, in exchange for the equity in the five houses. This, when proposed by the brokers to the defendants, was rejected by the latter, after they had conferred with both the brokers and with Purtman about the matter; the reason assigned being that to realize cash upon the mortgage would involve a discount of 20 per cent., which sum the defendants were unwilling to lose. Negotiations then followed between both the brokers and the defendants, resulting in an offer of $3,000 in cash by Purtman for the equity in the four houses, which was finally increased by him to $3,500. This offer, when communicated by Harrison to defendants, is claimed to have been accepted by Bachrach, one of the latter, who, in the presence of Harrison and Arnold, telephoned Purtman to come

over to defendants' office to "settle the business at the price of $3,500," $1,000 of which was to be deposited on that day, upon the signing of the contract, and the balance in 30 days.  Something had been said before that time about the adjustment of the interest and insurance, but the details thereof were not testified to.  Purtman came over to defendants' office, and there attended with his brokers, while one of the defendants, as claimed, after talking over the price and amount of deposit, the time for closing title, and other details, informed an attorney, William M. Golden, then present, of the terms of the proposed agreement, whereupon the latter dictated the same to a stenographer in the presence of all the parties.  It was testified that the defendants left the room at different times, and, upon their return, Bachrach said there was something else that he wanted, which was that he should have security that, when the interest upon the mortgages became due (in four or six months), it would be paid, which request was emphatically refused by Purtman, who said that he had never heard of such a demand in all his real estate experience; and, when the demand was insisted upon by Bachrach, Purtman replied: "I will not buy your houses.  It never happens that anybody shall pay interest in advance," whereupon Bachrach replied, "The deal is off." Upon cross-examination, Harrison claimed that the occasion referred to was the first that he ever heard of any demand by defendants that security should be given for the payment of the interest on the mortgages.  Upon redirect examination, it was disclosed that what the defendants really demanded was that the amount of the accrued interest, which they were to allow to Purtman upon the closing of the title, should be deposited with them to be held until the next interest day, in order to protect them against the possibility of the purchaser defaulting in the payment of the six months' interest then to become due.  The testimony of plaintiff was corroborative of Harrison's testimony in regard to the transactions with Purtman and as to what occurred at the time when the negotiations finally ended in a failure to agree upon the conditions for the sale.  He claimed never to have heard of any condition that the accrued interest should be deposited with the vendors, until it was made in his presence by defendants at the last meeting of the parties.

Isaac Purtman, the proposed purchaser, testified in effect that he was ready, able, and willing to make an agreement to purchase the four houses in question for $3,500 in cash over and above the mortgages thereon, which it appears were first and second mortgages on each house.  He was positive that the amount of deposit, $1,000, the time when title was to pass (within 30 days), as well as the purchase price, were fixed by defendants in their conversations with him over the telephone, but he was unable to state anything that was said as to the adjustment of rents, insurance, and interest, as "it didn't get that far."  His understanding of the demand made by the defendants as an additional condition of the agreement was that they desired to have the accrued interest, which was to be allowed the purchaser, deposited with them until the due day.  He claimed that the question was raised while the contract was being dictated, and before it was concluded.

The defendants' contention, sought to be established by their witness Bachrach, was that, when Harrison called upon them and offered the second mortgage on the Madison Street houses in payment for the equity in the West 110th street houses, they rejected it, but finally told him that, if he would bring a customer who would pay $3,500 cash over the mortgages and allow defendants to retain the accrued interest due on the mortgages, the property would be sold. Harrison produced such a customer in one Starr, and, acting upon his prior request, when Harrison called with Starr at defendants' office, a contract had been prepared which was handed to Starr, who rejected it, objecting to the interest being retained. Bachrach then said that he had such an understanding with the broker, and explained exactly what the provision meant. All this was in the presence of Harrison, who did not dispute Bachrach's statement. Starr's attorney was present at the interview, and it was then further given as the reason for this proviso that the brother-in-law of one of the defendants held a second mortgage of $2,500 on each of the houses, and that they desired to see that the interest was paid for his protection. After Starr and his attorney had left, Harrison asked whether the property would be sold to another purchaser under the same agreement, and at the same price, to which Bachrach replied, "If he came within reason about the entire terms," he might have it at the same price. Five or six days thereafter Harrison called and said he had a customer who would take the property instead of Starr, to which Bachrach replied that, if he was willing to make a contract similar to the one proposed for Starr, he could bring his purchaser over, whereupon at Harrison's request Bachrach telephoned Purtman to come to his office. When Purtman arrived there with his brokers, he requested that the contract be made in the name of the Cortelyou Realty Company, and the contract was then prepared in his presence and hearing and that of his brokers. When Purtman read it, he inquired why the interest was to be retained, which was explained to him as a usual provision where lots were sold to dealers and a very small amount paid in cash. Purtman said that, rather than leave any money on deposit, he would pay the interest on the first and second mortgages up to June 1st and May 1st, respectively, when they became due, and asked Bachrach if he would consent thereto, to which the latter assented. Arnold thereafter came and asked Bachrach to change the form of the contract and to omit this clause for the retention of the accrued interest, which Bachrach refused to do.

Defendants claim that Harrison had agreed to accept $250 originally as his commission on the sale if made. It appeared from the testimony of this witness that the amount of the accrued interest which would have been allowed to the purchaser upon taking title, and which defendants desire to retain for their protection, was about $1,500. Their purpose, as explained, was to prevent the purchaser getting title to this $113,000 worth of property by the payment of about $2,000 in cash, collecting the rents as long as they could, and defaulting in the payment of the interest on the mortgages when it accrued. The rents of the houses were about $3,000 each per annum. Jacob B.

Engle, the attorney for Starr, the prior purchaser, testified that he was present at the conversation with the latter in defendants' office when Harrison was present, but he was not allowed to testify to what was said about the retention of the interest due on the first and second mortgages.

Louis Starr, the prior purchaser produced by Harrison, testified to his visit to defendants' office, but was not allowed to testify as to what was then said in Harrison's presence in reference to an insistance by defendants upon the retaining of the accrued interest upon the first and second mortgages. William M. Golden, the attorney who prepared the proposed contracts between defendants and Purtman, testified that he drew the proposed contract for the sale of the premises in question, but he was not allowed to testify to what transpired at the time in the presence of all the parties, and was not even permitted to say whether the proposed contract was examined or read by either Purtman or Harrison. On cross-examination it appeared that he had prepared the proposed contract with Purtman from the prior proposed contract with Starr, and both of these proposed contracts, when offered in evidence, were excluded, although they apparently corroborated the testimony of the defendants to the extent that a clause appeared in the proposed contract with Starr for the deposit of the accrued interest with the vendors until the next interest day. In rebuttal Purtman denied that he had ever mentioned the name of Cortelyou Realty Company to defendants, and Harrison denied that there was any special agreement that he would take $250 for his commission. The plaintiff recovered a verdict for the full amount of his claim $1,-133, with interest, being the full 1 per cent. upon the selling price of the property.

[1] An important issue in the case was whether prior to the final meeting in defendants' office they had implied as a condition for any agreement to sell the premises in question the inclusion of a clause providing for the retention by them of the amount of accrued interest to be allowed the purchaser up to the time of taking title. If such was the fact, to the knowledge of the brokers or either of them, the plaintiff, as the court properly charged the jury, could not recover any amount whatever, for he pleaded that he had produced a purchaser ready, able, and willing to comply with the terms and conditions fixed by them, and concededly he produced no one who was willing to buy the premises and conform to such a provision. Upon that question of the knowledge of either Arnold or Harrison of such condition imposed by defendants, as well as upon the question of whether it was ever actually announced by them prior to the final meeting in their office, the testimony of Bachrach, Engel, and Starr as to what transpired in the presence and hearing of Harrison at the prior negotiations with respect to the sale of this very property and the inclusion of a similar provision for the deposit of the accrued interest was material; and so also were the contracts drawn up under defendants' supervision and submitted for the approval of both Starr and Purtman in the presence and hearing of Harrison.

The exclusion of such testimony and exhibits, duly excepted to, con-

stitute reversible error. It was also error to refuse to permit the cross-examination of Harrison as to the demand for the deposit of the accrued interest having been made in his presence during the negotiations with Starr, his customer, as a condition for any agreement to sell, and to exclude the testimony of Golden as to what transpired in the presence of the brokers with respect to the proposed contract with Purtman.

[2] The main question involved under the form of the complaint in this action is, Did defendants furnish to the brokers the full terms and conditions upon which they were willing to sell the property in question, and did the brokers produce a customer ready, willing, and able to comply with those terms?

In the absence of a special agreement, the services rendered by a broker to an owner of real estate generally fall into one of two categories: (1) Where the owner has given the broker the full and complete terms upon which he is willing to sell his property, and not merely the asking price thereof; (2) where the owner has his property for sale, and may or may not have set an asking price thereon, but does not fix the terms of the transaction leaving them to be determined thereafter. In the first case the broker's duty is fulfilled, and his commissions are earned when he produces a customer ready, willing, and able to comply with all the terms fixed by the owner. Should the latter then desire to add to the terms already imposed, the additional conditions must be germane to the original ones, if they are to furnish a sufficient reason for the refusal to pay the broker in case of the customer's refusal to agree to any modification of the original terms. In the second case the broker's commissions are not earned until the customer produced by him reaches an agreement with the owner upon the price and terms upon which a sale can be made. This, of course, does not mean that a contract in writing must be signed by the parties, but that their minds must meet not only upon the price, but upon the essential terms of an agreement to purchase. Backer v. Ratkowsky, 137 App. Div. 564, 122 N. Y. Supp. 225; Tanenbaum v. Boehm, 126 App. Div. 731, 111 N. Y. Supp. 185; Haase v. Schneider, 112 App. Div. 337, 98 N. Y. Supp. 587; Pullich v. Casey, 43 App. Div. 122, 59 N. Y. Supp. 298. Under the pleadings herein, the main questions of fact therefore were: Did the defendants communicate to the brokers the terms upon which they were willing to sell their property; if so, what were those terms; and did the brokers produce a customer ready, willing, and able to comply therewith?

The determination of the Appellate Term and the judgment of the City Court must be reversed and a new trial ordered, with costs to the appellants to abide the event. All concur.