FRYSINGER EVANS, Plaintiff, *v.* 2168 BROADWAY CORPORA-
TION et al., Defendants.
ABRAHAM J. BLAIVAS, Appellant; THOMAS DARLINGTON
et al., as Trustees, Respondents.

Argued May 15, 1939; decided July 11, 1939.

*David M. Palley* for appellant.

*Edwin R. Wolff, Daniel A. Shirk* and *Samuel Marion* (attorney for bondholders) for respondents.

FINCH, J. This is a proceeding arising out of a proposed judicial sale of real property wherein the trustees of the property and the would-be purchaser each claim the right to recover $20,000 deposited by the latter in connection with his offer to buy the property. On this appeal two questions are presented for decision: *First,* whether there existed only an offer which could be withdrawn at any time prior to acceptance, or whether the dealings between the parties had ripened into a binding contract; and, *second,* if there was a contract, was the recovery of the trustees to be measured by the whole sum deposited or only so much as equalled the damages actually sustained.

The facts will appear in the course of the discussion.

On May 4, 1937, Blaivas submitted an offer to purchase an apartment hotel at a fixed price. The deposit of $20,000 accompanied this offer, pursuant to a requirement of an order of the court authorizing sale of the property that the bids be " accompanied by a certified check for $20,000." The purchaser further limited the deposit by providing in writing accompanying the offer that the check must be returned " if this offer has not been accepted and duly approved by the Supreme Court * * * entered into within thirty days from date."

On January 11, 1938, the referee to whom were referred for hearing and report the bids received, submitted to the court with his report a copy of a proposed contract which Blaivas offered to make with the trustees. On January 28, 1938, Blaivas submitted an amendment to that proposed contract, namely, to guarantee to the bondholders ten per cent of the face amount of their bonds, provided that the expenses upon the sale were limited to $50,000. From then on the cost of the property to Blaivas was increased by the delay in the amount of $7,500 monthly, comprising taxes, interest and penalties. By the proposed amendment Blaivas hoped to induce the court to authorize the trustees to accept his offer. The court, however, refused to authorize an immediate acceptance of the offer. Instead, the court only went so far as to provide that the property should be put up for sale and " that in the event that the said * * * property shall not bring the amount of the said upset price at the * * * public sale * * * the same to be sold by the * * * trustees * * * to Blaivas, in accordance with * * * a certain proposed agreement * * * which agreement, in the event that said * * * property does not bring the upset price at said public sale (and not otherwise), is hereby approved, and shall be executed by the said trustees within five days from the date of the said public sale, and which said trustees are hereby directed to execute within such time, but only in the event (and not otherwise) that * * * said * * * property shall not bring the upset price at the said sale, and only in

the further event that the said Abraham J. Blaivas simultaneously executes the said agreement." The court thus refused to authorize an immediate acceptance of the offer. It directed the trustees to place the property on public sale at a fixed upset price and authorized the trustees to accept the offer in the future, and only in the event the property had been offered for sale and did not bring the upset price, with the further condition that Blaivas should simultaneously execute the proposed contract. The offer could have been accepted and an immediate contract could have been executed and approved, subject to the outcome of the public sale, but this was not done. Instead the acceptance of the offer and the execution of the contract was postponed expressly until after the property was put up at public sale and the upset price was not reached. If the proposed contract had been immediately approved and executed, the trustees would have been bound to sell and Blaivas would have been bound to buy if at the public sale the upset price were not obtained. The order of the court, however, forbade the trustees to enter into an immediate contract, even subject to the outcome of the public sale. The acceptance of the offer and the execution of the contract was deferred expressly until after the public sale. The legal effect of the terms employed and the meaning and purpose conveyed by the court to the trustees is not in doubt. Following various adjournments the sale was finally set for June 20th. On that day the sale was again adjourned until June 30th, without the consent of the attorney for the offeror and against the assurances theretofore received from the referee that there would be no further adjournments except for good and sufficient cause and then only upon the deposit by the applicant of the amount to pay for the cost of readvertising the sale. According to the petition of the trustees the adjournment was granted " at the request of certain individuals purporting to represent bondholders, upon the representation of an individual that he sought to purchase the trust *res* * * *" on the adjourned date, and without any deposit to pay for read-

vertising. On June 28, 1938, Blaivas, by letter, withdrew his offer. The trustees thereupon requested Blaivas to execute the proposed contract, which request he refused. Thereafter the trustees made an application to have the $20,000 which had been deposited with the clerk turned over to them and Blaivas made a cross-application for the return of the deposit to him. The motion of the trustees was granted and that of Blaivas denied.

While undoubtedly through the conduct of the parties the offer of Blaivas was kept open until its formal withdrawal by the letter of June 28th, yet at no time did it amount to more than an offer to enter into a proposed contract. Since this offer was not given for a consideration it could be revoked at any time before acceptance. (*Petterson* v. *Pattberg*, 248 N. Y. 86; 1 Williston on the Law of Contracts [Rev. ed. 1936], § 55.) Following such withdrawal Blaivas was entitled to the return of his $20,000. By the terms of the offer the $20,000 was restricted to a payment on account of the purchase price only if the offer were accepted and to be returned if the offer were not accepted. With this limitation upon the deposit no question arises of its having been deposited as security, and it must be returned if the offer is not accepted. Only if and when the proposed contract was actually executed and became a binding agreement was this deposit to be applied as a down payment.

Respondents urge that a different rule must be applied where an offer has been made in a judicial proceeding. Obviously an offeror cannot play fast and loose in a case where judicial approval is required. If an offeror duly submits an offer for approval to a court, where such judicial approval is required, it would seem that such offer might not be withdrawn pending approval proceedings, provided the latter were not unduly protracted. The case at bar, however, does not present such a situation. Here the offeror was endeavoring to obtain immediate acceptance of the offer by the court, and the court expressly declined to accept the offer or to enter into a contract until a future

contingency had taken place. Before the contingency arrived the offeror withdrew the offer. All the offeror has done in the case at bar is merely to acquiesce as a bidder in a proceeding which the court adopted in order to receive bids for the sale of property. Such acquiescence, however, would not convert an offer into either an irrevocable offer or a binding contract. (*Blossom* v. *R. R. Co.*, 70 U. S. 196; *Baker* v. *Sproul*, 37 Fed. Rep. [2d] 937; *Matter of Realty Foundation, Inc.*, 75 Fed. Rep. [2d] 286; *Matter of Glas-Shipt Dairy Co.*, 239 Fed. Rep. 122.)

Since there existed in the case at bar only a revocable offer, which has been withdrawn, we do not need to consider whether the deposit received may be considered as a down payment upon a purchase price which has been forfeited or whether the trustees are entitled only to so much thereof as equals the damages sustained.

It follows that the orders appealed from should be reversed, without costs, and the cause remanded to the Special Term with instructions that the sum of $20,000 be paid over to Blaivas with such interest as may have been earned thereon from the date of its deposit.

CRANE, Ch. J., LEHMAN, HUBBS, LOUGHRAN and RIPPEY, JJ., concur; O'BRIEN, J., taking no part.

Ordered accordingly.