BRUNNER-BOOTH FOTOCHROME CORP., Plaintiff, *v.* SARA KAUFMAN, Individually and as Executrix of JOSEPH N. KAUFMAN, Deceased, et al., Defendants.

First Department, February 21, 1963.

*Leon David Kogan* for plaintiff.

*Joseph G. Berick* (*Cravath, Swaine & Moore* of counsel), for Sara Kaufman and another, defendants.

*Benjamin Zwick* for Fotochrome, Inc., defendant.

STEVENS, J.   This controversy is submitted to the court for adjudication upon an agreed statement of facts pursuant to section 546 *et seq.* of the Civil Practice Act.

Because the sequence of events and the time element are important, the facts are set forth at some length.

The subject matter of the controversy is the proceeds due on two insurance policies, in the face amount of $50,000 and $25,000 respectively, issued on the life of one Kaufman by the New York Life Insurance Company.

The policies were purchased in 1954 by Brunner-Booth Photo Co., which was the owner and beneficiary of the policies and which paid all premiums due thereon.

On or about October 15, 1960, at a meeting between Biel, the president of Brunner-Booth Photo Co., and Nadaline, the president of Fotochrome, Inc., to discuss the purchase by Fotochrome, Inc., of the assets of Brunner-Booth Photo Co., a discussion took place with reference to a listed $28,000 asset valuation on life insurance policies.   Biel informed Nadaline that his company had taken out life insurance policies on the lives of its shareholders and paid the premiums.   The $28,000 represented the approximate cash surrender value.   Biel then said: " If our shareholders wanted to have the insurance policies turned over to them personally upon payment of the cash surrender value, how would you feel about it? "   Nadaline replied: " I would consider it, if there was no loss to our Company.   I would want a clean deal, however.   Everything must be agreed to and be finalized at the time of closing."

On January 21, 1961, Fotochrome, Inc., and Brunner-Booth Photo Co. entered into an asset purchase agreement whereby Fotochrome, Inc., purchased all of the assets of Brunner-Booth Photo Co.   Attached to the asset purchase agreement was a separate list of 10 insurance polices to be conveyed absolutely without qualification on the closing date to Fotochrome, Inc., or its assignee.   The list included the two policies here involved.

The necessary resolution of authorization and agreement was adopted by the board of directors of Brunner-Booth Photo, Inc., on January 21, 1961, and on the same date, in order to obtain the written consent of Kaufman to the asset purchase agreement,

Nadaline agreed, by separate instrument, to make a cash purchase of the prorata interest of Kaufman in the share consideration to be paid to Brunner-Booth Photo Co., for all its assets.

The asset purchase agreement, *inter alia*, set forth the entire agreement of the parties, except as set forth in any documents executed simultaneously; was to be binding upon the parties, their heirs, personal representatives and assigns; and included a provision to execute further and necessary instruments, if any, to convey good and marketable title to the assets and business sold.

Prior to the closing date Fotochrome, Inc., upon notice to Brunner-Booth Photo Co., assigned to plaintiff, its wholly owned subsidiary, its contractual rights to all of the assets of Brunner-Booth Photo Co. On the closing date, April 4, 1961, plaintiff acquired all the assets, including the policies, of Brunner-Booth Photo Co. by full payment of $175,000 in cash plus 25,000 shares of common stock of Fotochrome, Inc. On the same date Nadaline acquired the prorata interest of Kaufman in the stock consideration paid by plaintiff for the assets of Brunner-Booth Photo Co., by the payment of $166,000 in cash to Kaufman, who, for himself and his heirs, executed a general release to all parties.

After the execution of the documents, counsel for the buyer asked counsel for the seller for the new indorsement on all the insurance policies. Counsel for the seller, J. G. Berick, responded that he had not had time to apply for the indorsements and that Biel had told him Nadaline was willing to turn over the policies to the individual shareholders upon the payment of the cash surrender value of the policies. Counsel for the buyer, Kogan, stated that it was the first time he had heard that the individual shareholders had even considered taking over the policies. He then asked: "Are they interested?" Berick said: "*I haven't even discussed it with them.*" (Emphasis supplied.) Kogan stated that he had no authority to make any change and tried, unsuccessfully, to reach Nadaline. He then told Berick to hold the policies until he contacted Nadaline, but unless the parties agreed otherwise, all policies belonged to plaintiff and Berick was to handle the necessary indorsements.

Kaufman died April 24, 1961. At no time while alive did Kaufman or anyone in his behalf express any interest in purchasing the policies, nor did he demand any option rights, pay any consideration therefor, nor was any memo concerning the same made.

Thereafter, without the knowledge or consent of plaintiff or Kogan, and in the belief that the October 15, 1960 conversation constituted an option, papers were prepared by Berick on behalf of the executrix of Kaufman's estate, and a unanimous consent resolution passed by the board of directors of the seller, Brunner-Booth Photo Co., authorizing transfer of the policies to each shareholder upon payment of the cash surrender value, was signed by the various members of the board in May, 1961. All papers were then submitted to the New York Life Insurance Company, which without knowledge of the sale and based upon the papers submitted to it, certified the transfer of the policies to the executrix on June 19, 1961. A letter dated June 19, 1961 was prepared by the accountants for Brunner-Booth Photo Co. which stated plaintiff had granted to the individuals insured under the life insurance policies acquired from Brunner-Booth Photo Co. the option to purchase such policies. This letter was not based upon any information from plaintiff. It was inadvertently signed by two of plaintiff's officers. The policies had a cash surrender value of $15,709.25 on April 4, 1961, the date of the closing. The proceeds of the policies, $77,040.32, are the subject of this submission and the issue is, which party is entitled thereto.

The defendant asserts the conversation of October 15, 1960, in legal effect, constituted an option or continuing offer, which extended beyond the dates of the execution of the purchase agreement and the closing date (i.e., Jan. 21, 1961 and April 4, 1961) and even beyond April 24, 1961, the date of Kaufman's death, so that the right was acquired by Kaufman's estate which duly exercised its option to purchase such policies. Plaintiff's position is the contrary one. Both parties agree that the law of the State of New York shall govern.

An analysis of the conversation of October 15, 1960, raises grave doubt that any option to purchase ever existed or that any offer was made to sell the policies. The president of the seller had no authority to offer to purchase the policies for the shareholders and claimed none. Even the language used by him indicates the existence of a speculation — that is, the possible existence of a future state of mind on the part of the shareholders if they wanted the policies. Biel sought to ascertain Nadaline's reaction to a possible proposal. Nadaline went no further than to state he "would consider it, if there was no loss" to the purchaser. But even if it be considered as an offer to sell, the words following were words of limitation and established the duration of the offer, for Nadaline stated "I would want a clean

deal however. Everything must be agreed to *and be finalized at the time of closing.*" (Emphasis supplied.) Moreover, a mere expression of intention or general willingness to do something on the happening of a particular event or in return for something to be received does not amount to an offer. (*Chiapparelli* v. *Baker, Kellogg & Co.*, 252 N. Y. 192; Restatement, Contracts, § 25, Comment and Illustrations thereunder.)

Parenthetically, it should be noted that the purchase agreement of January 21, 1961, was signed by Kaufman as president of Brunner-Booth Photo Co. Attached to the agreement as a separate exhibit was a list of the policies with the name of the stockholder placed opposite. The list included the policies on Kaufman, who thus knew they were listed as an asset to be included in the sale.

There is no evidence that the option, or offer, if it existed, was communicated to Kaufman, or that Kaufman ever knew of its existence. Without such knowledge, or some act of ratification, there could never have been a contract (Restatement, Contracts, § 23). "An offer may not be accepted until it is made and brought to the attention of the one accepting" (*Trimble* v. *New York Life Ins. Co.*, 234 App. Div. 427, 431).

There was no consideration given and mutuality of obligation, though not essential, did not exist. The offer, if made, was revocable, for it was not in writing (Personal Property Law, § 33), no consideration was given or received, it was not in such form as to make the promise binding irrespective of consideration, and there was no agreement not to revoke for a stated time (cf. *Evans* v. *2168 Broadway Corp.*, 281 N. Y. 34). "A revocable offer can be accepted only by or for the benefit of the person to whom it is made" (Restatement, Contracts, § 54). If such person dies after receiving the offer, his executor, "though acting within the permitted time, cannot accept" (*ibid.*, Comment *a*, Illustration 1). "The death or insanity of the offeree also in effect terminates a revocable offer because it thereby becomes impossible to accept it" (Restatement, Contracts, § 48, Comment *a*; 9 N. Y. Jur., Contracts, § 28; *Twenty-Third St. Baptist Church* v. *Cornell*, 117 N. Y. 601).

If an option were created by the conversation of October 15, 1960, and no time was fixed, still the acceptance must have been within a reasonable time. This at most would have been April 4, 1961, when there was a closing without reservation, and, additionally, the giving of a general release, by Kaufman also without reservation. The very nature of the contract of purchase of assets would establish such limitation as a reasonable time (Restatement, Contracts, § 40), for on April 4, 1961, there

was a complete transfer of assets and new vesting of title, rights and obligations.

It was stipulated that the letter of June 19, 1961, and the certification of ownership by New York Life should have probative effect solely as to their existence, but should not be binding upon plaintiff as an admission against interest. Such letter was prepared without the authority of plaintiff, and was signed following the execution by one of the officers of a consent resolution in May, 1961. It certainly could not serve as a memorandum required under section 31 of the Personal Property Law, for it was after the event and not executed simultaneously with the purchase agreement as required. The rights of the beneficiary under the policies became fixed as of the time of Kaufman's death (*Fink* v. *Fink*, 171 N. Y. 616), and, the option not having been exercised, the policy or its proceeds could not validly have been transferred without the consent of the owner-beneficiary, the plaintiff herein. Even the resolution executed in May, 1961, and signed by the board of directors of the seller, Brunner-Booth Photo Co., could not serve to transfer an interest in the title to the policies or the proceeds thereof, for the seller then had nothing to transfer.

There are sufficient facts presented necessary to the determination of the controversy. There should be judgment for the plaintiff upon the law and the facts, in the sum of $77,040.32. All questions to be resolved by the submission are answered in the negative.

BREITEL, J. P. (dissenting). The proceeding should be dismissed.

It is evident from the stipulation of agreed facts that it is incomplete. Relevant facts are omitted, some of which are critical to a proper determination, given the rules which circumscribe the court's power in submitted controversies. The most significant omission is that of the conversations from which emanated whatever arrangements there were for the transfer of the life insurance policies. Consequently, it is not possible to find the ultimate facts which would determine the nature, effect, and legal enforcibility of the arrangements.

It is also evident from the stipulation, confirmed by the briefing, that it was executed without awareness of the rules applicable to the procedure (Civ. Prac. Act, §§ 546–548). Consequently, the stipulation is defective and requires numerous inferences of fact by the court, a process precluded in this type of proceeding (*Cohen* v. *Manufacturers Safe Deposit Co.*, 297 N. Y. 266, 269; *Cormeny* v. *American Bosch Arma Corp.*, 7 A D 2d 912, involving a stock option).

Taking the stipulation at full value it is also evident that the so-called offer could not have been a naked offer but was related somehow to the sale of the other business assets. Hence, apart from the procedural bar on the making of inferences of fact, one may not conclude on this presentation, that the offer was without consideration.

Assuming that the offer was without consideration the death of Mr. Kaufman is not determinative. While generally an offer terminates with the death of the offeror or offeree, the question remains to whom the offer was addressed (Restatement, Contracts, § 28; 1 Corbin, Contracts, § 56; cf. 1 Williston, Contracts [3d ed.], § 62). Thus, one must first conclude, as a matter of factual inference, from the evidentiary facts whether the offer was addressed only to the offeree or whether it also ran in favor of his assigns and estate. The subject of the offer being life insurance, an issue of fact, resolvable only by inferences, unavoidably arises. The parties might well (indeed should) have contemplated the death of the insured, the most significant term of a life insurance contract.

Of course, if there was consideration for the offer, there was a binding option contract. In that case, the general rule, unless the nature of the proposed contract confines performance to the offeree, is that the option survives the death of the offeree (Restatement, Contracts, § 48, Comment a; § 49).

The absence (like so many other omissions in this stipulation*) of a stipulated fact that the offer was communicated to Mr. Kaufman is of no significance. It suffices that the offer was communicated to his agent, Mr. Berick (Restatement, Contracts, § 23, Comment a).

To top it off, it is manifest that the court in finding judgment for plaintiff is making numerous inferences of fact. This is forbidden (Cohen v. Manufacturers Safe Deposit Co., 297 N. Y. 266, supra; Cormeny v. American Bosch Arma Corp., 7 A D 2d 912, supra).

Finally, the result appears on this submission to be unjust. Plaintiff receives a windfall, although the undisputed circumstances indicate that it did not bargain for it. It undoubtedly preferred, as would be expected, to part with the policies and the related continuing burden of paying premiums on the life insurance of persons about to become strangers to the enter-

---

* Perhaps the worst omission is the letter of the attorney for the outgoing stockholders containing a proviso that the stockholders could obtain the policies upon payment of the cash surrender values. The letter is dated April 4, 1961 when the principal contract was closed, and it appears only as an exhibit to defendant's brief.

prise.* The individuals and their families, on the other hand, had every reason to be willing to carry the burden in exchange for a protection they would no longer receive through the assets of their former corporation. The fair and just result is frustrated, so far as one knows from the submission, only because Mr. Kaufman died too soon for him or his agent to complete the necessary arrangements. Perhaps even in a plenary action on complete proof, the estate will not prevail, because of the impact of rules of law and because the arrangements never passed beyond an inchoate phase. But surely, on this stipulation, incomplete because of obvious omissions, defective because dependent on inferences of fact, ill-born because of misconception by both parties as to the governing procedure, there is no occasion to precipitate a result, unnatural and not contemplated by the parties.

RABIN and McNALLY, JJ., concur with STEVENS, J.; BREITEL, J. P., dissents in opinion in which VALENTE, J., concurs.

Judgment for plaintiff, upon the law and the facts, in the sum of $77,040.32, without costs. All questions to be resolved by the submission are answered in the negative. Settle order on notice.

---

* On the argument, it was verified that the policies were not paid up and there were future annual premiums to be paid.