Chief Judge Fuld.
In this action to recover real estate brokerage commissions, the courts below held in favor of the plaintiff. We reach a different conclusion.
The defendants, who owned a farm located in the Town of Riverhead, Long Island, listed it with the plaintiff, a licensed real estate broker, for sale at a price of $100,000 — later increased to $100,500 — with terms to be arranged. The plaintiff, having located a Mrs. Appleby as a possible purchaser, notified the defendants of his prospect and was told to contact their attorney so that he might draw up the proposed terms of sale. That lawyer thereafter prepared a contract setting forth the terms which his clients desired and mailed it to Mrs. Appleby on July 3, 1965. However, Mrs. Appleby, not content with this agreement, insisted upon the inclusion of additional terms, including (1) release clauses, (2) the privilege of prepayment after one year instead of five years, (3) a guarantee as to acreage and reduction in price if there were less acreage, (4) delayed times of payment and (5) a later closing date. Then, following discussions between counsel representing both parties, it was arranged that Mrs. Appleby’s lawyer would prepare two riders reflecting the suggested changes, attach them to the cop- *355 tract and forward the agreement in its modified form to his client for her signature. The document was then to be submitted to the sellers for their approval. When, some three weeks later, the contract, containing the modifications required by Mrs. Appleby, was submitted to the defendants, they refused to go through with the deal. The property was later sold to another purchaser who had been produced by another broker during the time Mrs: Appleby’s counterproposal was being reduced to writing.
We deem it settled that “mere agreement as to price on a proposed sale of real property does not constitute a meeting of the minds of vendor and vendee so as to entitle the real estate broker to commissions. The parties must be brought to agreement with respect to all terms customarily encountered in such a transaction.” (Matter of Altz, 274 App. Div. 894, affd. 300 N. Y. 607; Sibbald v. Bethlehem Iron Co., 83 N. Y. 378, 382; see, also, Thompson & Co. v. New Madison Sq. Garden Corp., 225 App. Div. 521, 522; Arnold v. Schmeidler, 144 App. Div. 420; Haase v. Schneider, 112 App. Div. 336; Pearsen v. Lemken, 34 Misc 2d 636, 640.) The fact that, in the case before us, the brokerage agreement obligated the plaintiff to procure a purchaser for $100,000, “with terms to be arranged,” in no way alters this principle. Where an owner merely specifies the purchase price of property, without fixing the other terms of sale, commissions are not earned until and unless the person produced by the broker reaches an agreement with the owner not only as to price but also as to the terms upon which the sale is to be made. (See, e.g., Arnold v. Schmeidler, 144 App. Div. 420, 427, supra; House v. Hornburg, 267 App. Div. 557, 561; see, also, Restatement, Second, Agency, § 445, comment d, p. 347; Biskind and Barasch, Law of Real Estate Brokers [1969], § 67.01, pp. 165-166.) The Arnold case (144 App. Div. 420, supra) is illuminating. The court there held that, where the owner places his property for sale with a broker “ and may * * * have set an asking price * * * but does not fix the terms of the transaction, leaving them to be determined thereafter * * * the broker’s commissions are not earned until the customer produced by him reaches an agreement with *356 the owner upon the price and terms upon which a sale can be made ” (p. 427).[1]
Since Mrs. Appleby never reached an agreement with the defendants concerning the essential terms of the transaction, the plaintiff did not earn his commission. She received a proposed contract from the defendants’ attorney on July 3, 1965, but never executed or returned it. In fact, as previously indicated, she requested that substantial changes be made and did not notify the defendants of the modifications until July 24— after the sellers had already become interested in another buyer willing to pay a higher price. On the record before us, it is clear that the defendants were free to negotiate with a second prospective buyer until such time as Mrs. Appleby agreed to the terms they had offered. They were privileged to revoke or withdraw their offer at any time before receiving an effective acceptance. (See, e.g., Evans v. 2168 Broadway Corp., 281 N. Y. 34; Petterson v. Pattberg, 248 N. Y. 86; see, also, 1 Williston, Contracts [3d ed., 1957], § 55, p. 176.)
With respect to the plaintiff’s contention that a seller may not terminate the broker’s authority in bad faith and thereby avoid payment of a commission where the broker has already procured—or is on the verge of procuring — a buyer ready and able to complete the purchase upon the terms prescribed by the seller, it is enough to state that there is no evidence in the record before us to justify a finding of bad faith.
The order appealed from should be reversed, with costs, and the complaint dismissed.
Judges Burke, Scileppi, Bergan, Breitel, Jasen and Gibson concur.
Order reversed, etc.

. The Restatement is to the same effect (Agency, Second, § 445, comment d, p. 347) : “ When the principal has furnished the broker with only part of the terms, with the understanding that further details are subject to negotiation between the principal and the customer, the principal, unless acting in bad faith (see § 454), is free to terminate such negotiations without liability to the broker. The principal’s promise to pay the broker a commission does not become binding unless the principal and the customer reach a present definitive oral or written agreement.”