■ STEPHEN R. KENT, Respondent, v AURORA PRODUCTS CORP., Appellant.—In an action for real estate brokerage commissions, defendant appeals from a judgment of the Supreme Court, Nassau County, entered May 2,

1974, in favor of plaintiff after a nonjury trial. Judgment reversed, on the law and the facts, with costs, and complaint dismissed. In 1970 defendant listed with plaintiff, ·for sale on a nonexclusive basis, a parcel of real property located in Syosset, Nassau County, on which it held a subsequently exercised option to purchase. Within a short time after the listing plaintiff produced a prospect, Gibraltar Land Resources Company, Inc., (Gibraltar). After an inspection of the Syosset parcel, representatives of Gibraltar and defendant met in June, 1970. At that meeting, mention was made of two other properties owned by defendant in Sag Harbor, Suffolk County, and negotiations were commenced for a sale and leaseback of all three parcels. A written proposal by Gibraltar was rejected. A lull ensued until September 14, 1970 at which time a new proposal as to Sag Harbor was submitted by Gibraltar to defendant. Briefly, the original negotiations centered around a purchase price of $2,135,000, payable $1,695,000 in cash and the balance by taking subject to a mortgage in the sum of $440,000, to be followed by a leaseback of the premises to defendant at a certain net rental. Offers and counteroffers concerning the payment of less cash and a greater return on the leaseback were discussed and rejected, leaving the situation unresolved. Although a principal of Gibraltar testified that it had a line of credit of up to 40 millions of dollars and that any one of 37 subsidiary corporations could take title, at no time during the course of the negotiations was a definite "ready, willing and able" purchaser produced or named. Thus, plaintiff did not meet its burden of showing a meeting of the minds. Oddly enough, also, despite its vaunted claims and its purported line of available credit, Gibraltar was then apparently experiencing difficulty in obtaining the relatively modest financing required for the transaction. It kept Aurora dangling from June to November, 1970 without paying one penny for the privilege and without a shred of executed writing to bind either side. The situation lends credence to the suspicion, voiced in the trial testimony of defendant's attorney, that Gibraltar was seeking to get possession of the properties and turn a quick profit on their resale without risking the expenditure of any of its own funds. Throughout the period of the negotiations defendant made no secret of the fact that it was in need of fresh money and that it was receptive to any legitimate source for the desired funds. Both Gibraltar and plaintiff were aware of defendant's temporary financial embarrassment and were aware, also, that it was free to break off negotiations at any time, provided it did not do so for the purpose of evading payment of the broker's commission (see *Williams & Co. v Tuttle & Co.,* 6 AD2d 302, mot for lv to app den 6 AD2d 1006). By late November, when no proposal had resulted in final agreement, defendant notified Gibraltar that the National Biscuit Company (Nabisco) was interested in acquiring it as a subsidiary corporation. Trial Term drew the inference that because of that impending acquisition, defendant capriciously refused to proceed with the Gibraltar negotiations. However, the record shows that months before its acquisition by. Nabisco defendant .had obtained the financing it sought through a mortgage broker and that it presumably paid a fee therefor to the finder. This is a fair indication that it was not trying to deprive plaintiff of his commissions. Indeed, both plaintiff and Gibraltar were themselves attempting to obtain fresh money for defendant independently of the negotiations between Gibraltar and defendant. This is not a case such as *Trylon Realty Corp. v Di Martini* (40 AD2d 1029, affd 34 NY2d 899) wherein the defendant refused to go forward with a variance application before a zoning board of appeals (after an informal assurance had been received from the board that the application would be approved as amended), thus frus-

trating the sale and incidentally wrongfully depriving the broker of his commission. Nor does it fall within the factual circumstance of *Goodman v Marcol, Inc.* (261 NY 188, 192) where, as the court remarked: "The evidence here is not only sufficient, it strongly impels to the conclusion that the plaintiff was acting within a reasonable time when he submitted the last offer received of $177,500; that his labor to procure the stipulated price of $180,000 was about to prove successful; that he was dismissed from his employment by the defendant, not because a reasonable time had elapsed, but solely that the defendant might save itself from the payment of the customary commissions." The facts herein fit rather into the pattern of *Kaelin v Warner* (27 NY2d 352, 355). There, in dismissing the broker's complaint, FULD, Ch. J., writing for a unanimous court, noted: "We deem it settled that 'mere agreement as to price on a proposed sale of real property does not constitute a meeting of the minds of vendor and vendee so as to entitle the real estate broker to commissions. The parties must be brought to agreement with respect to all terms customarily encountered in such a transaction.' (Citing cases.) The fact that, in the case before us, the brokerage agreement obligated the plaintiff to procure a purchaser for $100,000, 'with terms to be arranged,' in no way alters this principle." and further: "Where an owner merely specifies the purchase price of property, without fixing the other terms of sale, commissions are not earned until and unless the person produced by the broker reaches an agreement with the owner not only as to price but also as to the terms upon which the sale is to be made." Since at Bar no essential agreement had been reached and defendant did not wrongfully or arbitrarily prevent consummation of the negotiations, the judgment should be reversed and the complaint dismissed. Martuscello, Cohalan and Shapiro, JJ., concur; Gulotta, P. J., and Latham, J., dissent and vote to modify the judgment by changing the effective date of the award of interest to November 24, 1973 and amending the total amount of recovery accordingly, with the following memorandum: In our view this real estate brokerage commission case essentially involves a question of credibility and Trial Term properly found in favor of plaintiff. While, however, we agree with Trial Term's (SUOZZI, J.) decision as to the merits of this case we note our disagreement with its award of interest from January 15, 1971. The record reveals that the parties agreed to a 5% brokerage commission which could be paid any time within two or three years— apparently at the option of defendant. Under these circumstances we feel that the award of interest should only have commenced some three years after the scheduled closing date, November 24, 1970.