OPINION OF THE COURT
Thomas A. Dickerson, J.
After trial on December 14, 1994, the court makes the following findings of fact and conclusions of law.
The plaintiffs, Mindy and Ken Gellerman, went shopping for a house and found one they liked at 25 Carrigan Avenue, White Plains, New York. The house was owned by the defendants, Ron and Eileen Oleet. In late July 1994 the plaintiffs through their real estate broker, Marilyn Richards, made an offer to buy the Gleets’ house for $420,000. The Gleets found this price acceptable and agreed to negotiate with the Geller-mans on the remaining terms and conditions of a contract of sale.
To facilitate the negotiations the Gellermans retained the legal services of Jeffrey D. Taub, Esq. Mr. Taub spoke with the Gleets and their attorney, Robert Gurian, Esq., on several occasions. On July 29, 1994 and August 4, 1994, Mr. Taub requested that the "proposed contracts of sale” be sent to him. Notwithstanding these negotiations, no contracts were sent nor was any agreement reached on the sale of the Gleets’ house.
On August 5, 1994, the Gleets notified the Gellermans that they were no longer interested in proceeding with negotiations regarding the sale of their house.
The Gleets’ real estate broker, Ms. Glasser, told Ms. Richards, the Gellermans’ real estate broker, that if the Geller-mans obtained a new attorney that the Gleets would be willing to continue negotiations for the sale of their house. In reliance upon Ms. Glasser’s promise of continued negotiations, the Gellermans hired Eric Blaha, Esq.
As a result of the retention of a new attorney the Gleets decided to recommence negotiations for the sale of their house. During the period August 25, 1994 to August 30, 1994, *717 Mr. Blaha negotiated with the Oleets’ attorney regarding the sale of the Oleet house.
On September 1, 1994, the Oleets terminated the negotiations a second time claiming that the Gellermans had financing problems.
The Gellermans were angry when the Oleets terminated the latest negotiations. They claimed that the Oleets were not acting in good faith. Particularly annoying was the fact that the Gellermans hired a new attorney, Mr. Blaha, at the recommendation of the Oleets’ real estate broker, Ms. Glasser. After September 1, 1994, Mr. Blaha sent the Gellermans a bill for legal services in the amount of $1,034 for 9.4 hours of work rendered in negotiating for the purchase of the Oleet house.
The Gellermans had hired Mr. Blaha upon the recommendation of Ms. Glasser, the Oleets’ real estate broker. They did so relying upon the belief that such an additional expense would lead to a signed contract of sale. When negotiations were terminated and the Gellermans were presented with a bill for $1,034 for legal services they decided to bring the instant lawsuit seeking "Expenses incurred during contract negotiations to purchase defendant’s home. Defendant misrepresented their position several times, would not deliver contract.”
After the Gellermans commenced the instant action the Oleets’ attorney sent the Gellermans a letter (with a copy to the court) in which it was stated that "upon the trial of this matter, I intend to ask the Court to award my clients reasonable legal fees, costs and disbursements * * * The grounds for my application will be that your lawsuit is, to your knowledge, frivolous and utterly without any legally redeeming value.”
DISCUSSION
 Based upon the foregoing facts and contrary to the chilling* assertions of defendants’ attorney, the plaintiffs have stated a cognizable cause of action for promissory estoppel.
*718 There Was No Contract Of Sale
It is clear that the only element of the proposed contract of sale which the parties agreed upon was the price of $420,000. Although negotiations did take place on two different occasions there was never any agreement on additional terms and conditions necessary to flesh out the contract of sale. For there to be a contract of sale the buyer and seller must reach agreement on all of the essential terms of the transaction (see, e.g., Friedland Realty v East Main, NYLJ, Nov. 9, 1994, at 26, col 4 [Yonkers City Ct] [brokerage commission not earned until parties agree on all essential terms]; Kaelin v Warner, 27 NY2d 352, 355 [1971] [buyer must reach agreement "with the owner not only as to price but also as to the terms upon which the sale is to be made”]). Since there was no contract between the plaintiffs and the defendants there can be no breach thereof. At best, the parties agreed to negotiate and did so without success.

Promissory Estoppel

In the absence of contractual obligations the concept of promissory estoppel provides a remedy for persons who detrimentally rely upon the promises of others and are injured thereby. (See generally, Note, The Waning Of Promissory Estoppel, 79 Cornell L Rev, 1263-1290.) The purpose and elements of the doctrine are set forth in King & Son v De Santis Constr. (97 Misc 2d 1063, 1066 [1977]):
"The doctrine of promissory estoppel is intended to avoid the harsh results of allowing the promisor to repudiate, when the promisee has acted in reliance upon the promise.
"The elements of a promissory estoppel are a promise clear and unambiguous in its terms; reliance by the party to whom the promise is made, such reliance to be both reasonable and *719 foreseeable; the party asserting the estoppel must be injured by his reliance.”
Was The Promise Clear?
The promise which Ms. Glasser made to the Gellermans was that if they hired a new attorney the Gleets would recommence negotiations for the sale of their house. The Geller-mans believed that this meant that the Gleets would, in fact recommence negotiations and then enter into a binding contract of sale. There was a lack of clarity as to what precisely was being promised (see, e.g., Sanyo Elec, v Pinros & Gar Corp., 174 AD2d 452 [1991] [promise lacks clarity]; Ripple’s of Clearview v Le Harve Assocs., 88 AD2d 120 [1982] [no "clear representation”]).

Was Reliance Reasonable?

The Gellermans’ interpretation of Ms. Glasser’s promise as nearly guaranteeing that the Gleets would sell them the house was unreasonable. The only agreed upon term of a proposed contract of sale was the price with all other terms to be negotiated. It was, simply, unreasonable for the Gellermans to assume that upon recommencement of negotiations agreement between the parties would be reached as to all outstanding terms and conditions of a proposed contract of sale.

An Agreement To Agree

What happened here is that the Gellermans relied upon a promise made by the Gleets’ real estate broker and hired a new attorney. That promise was, at best, a promise to continue negotiations. And, in fact, the Gleets continued to negotiate but without the result desired by the Gellermans.
The parties agreed to agree in the future and such an "agreement” is unenforceable (see, e.g., Messina v Biderman, 174 AD2d 614 [1991] ["It is well settled 'in the common law of contracts in this State that a mere agreement to agree, in which a material term is left for future negotiations, is unenforceable’ ”]; Tribune Print. Co. v 262 Ninth Ave. Realty, 88 AD2d 877 [1982] ["there was nothing more than a promise by defendant to come to a future agreement on the terms and conditions of a new lease * * * Thus, the agreement, if any, was simply an 'agreement to agree’ in the future and hence is unenforceable”]).
*720 Although the Gellermans’ disappointment is understandable their complaint herein must be dismissed. The defendants’ request for the imposition of costs, disbursements and attorneys’ fees is denied.

 [2] The letter from defendants’ attorney seeking to discourage plaintiffs from pursuing their claim in this court needs some discussion. Although such letters may be the norm in the arena of commercial litigation between sophisticated parties represented by competent counsel they are not appropriate in the arena of Small Claims Courts. The guiding philosophy in this court is to encourage the general public to pursue perceived legal claims using their own language and without being bound by the form and expense of standard pleadings and procedure. As noted in Celona v Celona (NYLJ, *718 Mar. 25, 1994, at 36, col 2 [Yonkers City Ct]): "From inception the goal of Small Claims courts has been to provide a simplified and expeditious mechanism whereby economically unlitigatable claims may be heard without the burden of being bound by statutory rules of practice, procedure, pleading and evidence.” (For a history of Small Claims Courts see, Levins v Bucholtz, 208 Misc 597 [App Term 1955]; Weiner v Tel Aviv Car Limousine Serv., 141 Misc 2d 339 [1988].)
The plaintiffs in this action did, in fact, enunciate a cognizable cause of action for promissory estoppel albeit unsuccessfully. Pleading a procedurally correct cause of action is not a precondition for utilizing the judicial and remedial services provided by the Small Claims Courts of this State. From a policy standpoint it is important for the general public to have available an inexpensive forum where their civil grievances may be heard by a Judge notwithstanding the ultimate lack of merit of such claims.