ETABLISSEMENT ASAMAR
LTD., et ano., Plaintiffs,

v.

LONE EAGLE SHIPPING LTD.,
et al., Defendants.

No. 94 Civ. 7886 (LAK).

United States District Court,
S.D. New York.

April 21, 1995.

John C. Stratakis, Poles, Tublin, Patestides & Stratakis, New York City, for plaintiffs.

Terry L. Stoltz, Kirstein P. Merone, Burlingham Underwood, New York City, for defendants.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This is an action to recover $95,762.67, which is the balance due for bunkers delivered to the M/V Alpha Star in 1993 in Amsterdam and Dunkirk. The delivery of the bunkers and the amount of the unpaid balance are undisputed. Defendants assert, however, that the parties entered into a binding agreement to settle the liability for $40,000 and that plaintiffs have reneged. The matter is before the Court on cross-motions for summary judgment.

### Facts

The pertinent facts are simple and undisputed in all respects save one. In October and November 1993, plaintiff Etablissement Asamar Ltd. ("Asamar") delivered bunkers to the M/V Alpha Star in Amsterdam and Dunkirk at a total price of $205,762.67, of which $95,762.67 remains unpaid. The vessel subsequently sustained severe hull damage by reason of heavy weather and/or peril of the sea and became a total loss. The vessel's owner, Lone Eagle Shipping Ltd. ("Lone Eagle") thereupon appointed Shipping and General Consultants, Ltd. ("S & G") to marshal its remaining unencumbered assets and to seek to negotiate settlements of all outstanding claims. It is these negotiations that give rise to the dispute in this case.

On June 17, 1994, S & G conveyed to plaintiff Asamar, Inc. the owner's offer to settle for 35% of the amount due (Stratakis Aff. Ex. 11), which was $33,516.93. On June 20, 1994, Asamar responded as follows:

"Although we appreciate your previous offer to settle by paying 35 pct of the amount due on the above bunker debt we feel it is still alittle [*sic*] low. Especially after owners promised full payment on more than one previous occasion.

"We are willing to accept a flat amount of USD 40,000.00. If owners agree, please remit funds ..." (*Id.* Ex. 12)

It concluded with the phrase "please advise." (*Id.*)

There is no evidence of any response by the owner, at least prior to August. Defendants, however, have submitted an affirmation claiming that plaintiffs' principal, Mr. Pappaceno, stated in July or early August that he had agreed with S & G on a $40,000 settlement, but had been unable to obtain information as to when he would be paid. (Dushas Aff. ¶ 5) Mr. Pappaceno has submitted a supplemental affidavit denying Dushas' assertion and stating that he never reached any such agreement. (Pappaceno Aff. ¶ 9)

Whatever may have passed between Dushas and Pappaceno and between Pappaceno and S & G, plaintiffs' counsel prepared a letter to the Le Timon, one of the owner's agents, dated August 9, 1994, in which they demanded payment of the full $95,762.67 plus interest. (Economou Aff. Ex. 4) This letter appears to have been received by Le Timon on August 16, 1994. (*Id.*) It is undisputed that this letter was in the hands of Tom Dushas, one of the defendants, no later than August 18, 1994, and was received by S & G on August 19, 1994. (*Id.*)

S & G, for its part, sent a facsimile, dated August 17, 1994, to Asamar which stated:

"Further to our previous correspondence we are pleased to inform you that we expect to collect moneys due to the Owners of the [Alpha Star] towards the end of September.

"Assuming that everything goes well and the amounts are collected on time we shall be able to pay you in September upon collection." (*Id.* Ex. 3)

The August 17 fax does not indicate the amount that S & G hoped to pay "in September upon collection."

## Discussion

### Contentions of the Parties

Defendants argue that Asamar's June 20, 1994 fax, in which it indicated a willingness to accept $40,000, gave rise to a binding agreement to settle at that figure on the theory that the fax accepted the owner's prior offer to settle for 35% of the amount due. They appear to rely on the Dushas affirmation in support of their contention that plaintiffs construed the June 20 fax as concluding a deal. (*See* Def. Reply Mem. 8) Alternatively, they contend that the June 20, 1994 fax was a counteroffer by plaintiffs to settle for $40,000, which was accepted by S & G's August 17, 1994 fax. Curiously, defendants do not argue that a binding agreement was reached between Pappaceno and S & G, apart from the exchange of correspondence described above, as the Dushas affirmation might suggest. In addition, Lone Eagle contends that summary judgment may not be entered against it because it has pleaded the defense of lack of jurisdiction over its person, and plaintiffs have failed to make any showing to overcome that defense.

Plaintiffs argue that the June 20, 1994 fax could not have accepted the offer to settle for 35% because it varied materially from the terms of the offer. Moreover, they assert that the August 17, 1994 S & G fax gave rise to no binding agreement because (a) plaintiffs' prior offer to accept $40,000 has terminated by the August 9, 1994 letter in which their counsel demanded payment of the full amount and, in any case, (b) the August 17, 1994 fax was not an unequivocal and definite acceptance of the $40,000 offer.

### The June 20, 1994 Fax

█ The June 20, 1994 fax did not give rise to a binding agreement to settle the controversy. It responded to the previous offer to settle for 35% of the amount owed, which amounts to $33,516.93. The indication of willingness to accept $40,000 in response to an offer of $33,516.63 was not an acceptance because it varied materially from the terms of the offer. It was a counteroffer

and, in consequence, a rejection of the prior offer. *E.g., Gram v. Mutual Life Insurance Co. of N.Y.,* 300 N.Y. 375, 382, 91 N.E.2d 307 (1950); *Roer v. Cross County Medical Center Corp.,* 83 A.D.2d 861, 441 N.Y.S.2d 844 (2d Dept.1981); *Greystone Partnerships Group, Inc., v. Koninklijke Luchtvaart Maatschappij N.V.,* 815 F.Supp. 745 (S.D.N.Y.1993); I E. Allan Farnsworth, Farnsworth on Contracts §§ 3.13, at 229, 3.21, at 258–59 (1990) (hereinafter Farnsworth).[1]

### The August 17, 1994 Fax

The first question we must address in considering the effect of the August 17, 1994 fax is whether plaintiff's June 20, 1994 offer to settle for $40,000 was still in effect, putting aside for the moment the question whether it had been accepted earlier as Dushas' affirmation appears to claim.

█ Inasmuch as the June 20 offer did not specify a time for acceptance, it was open for a reasonable time unless sooner revoked. *Kaelin v. Warner,* 27 N.Y.2d 352, 356, 318 N.Y.S.2d 294, 296, 267 N.E.2d 86, 88 (1971); Farnsworth § 3.19, at 253–54. What is reasonable depends upon the circumstances, including the question whether continuation of the offer exposes the offeror to speculative risk and any course of dealing between the parties, and usually presents an issue of fact. *E.g., Oliver v. Wells,* 229 App.Div. 356, 243 N.Y.S. 328, 332 (3d Dept.), *aff'd,* 254 N.Y. 451, 173 N.E. 676 (1930); Restatement (Second) Contracts § 41(2) and *Comment b* (1981). While this may be a case in which the historical facts permit only one conclusion as to reasonableness, I assume, rather than decide, that the June 20 offer was effective and capable of acceptance on August 17 unless sooner accepted or revoked.

█ The August 9 letter by plaintiffs' counsel was inconsistent with the offer to settle for $40,000 and therefore constituted a revocation of the June 20 offer unless that offer was accepted prior to the revocation becoming effective. A revocation of an offer

---

1. We note that the parties have devoted a good deal of attention to whether this matter is governed by Greek or New York law and submitted affidavits as to the Greek law. They appear to agree, however, that there is no difference between Greek and New York law material to resolution of these motions. Accordingly, we apply New York law.

sent by mail or electronic means is not effective until it is received. *Stein–Gray Drug Co. v. H. Michelsen Co.*, 116 N.Y.S. 789 (Mun.Ct.1909); FARNSWORTH, *supra* § 3.17, at 249. Hence, assuming the August 17 fax was sufficient to accept the June 20 offer, it was effective only if it was sent before the August 9 revocation was received. The question, then, is when the August 9 letter was received.

The letter was addressed to Le Timon in care of Dover Agency & Brokerage, to the attention of Tom Dushas. As noted, defendants' copy bears an August 16, 1994 date stamp. Mr. Dushas then faxed that copy to Mr. Economou at S & G on August 18, 1994. In consequence, we conclude that the letter was received by Le Timon and Mr. Dushas on August 16, 1994 and by S & G on August 18, 1994.

Plaintiffs' June 20 offer to settle for $40,-000 was made to S & G in its capacity as agent for the owner of the M/V Alpha Star, Lone Eagle. (*See generally* Economou Aff. ¶¶ 6, 8; Stratakis Aff. Exs. 9–12) Le Timon and Dover at all relevant times were Lone Eagle's agents. (*Compare* Am.Cpt. ¶¶ 4, 6 *with* Lone Eagle Ans. ¶¶ 4, 6) Hence, Dover's receipt of the August 9 letter demanding full payment constituted notice to Lone Eagle that the $40,000 offer was revoked and deprived Lone Eagle and its agents of the power of acceptance. *E.g., Corporacion de Mercadeo Agricola v. Mellon Bank International*, 608 F.2d 43, 46 (2d Cir.1979); *Center v. Hampton Affiliates, Inc.*, 66 N.Y.2d 782, 784, 497 N.Y.S.2d 898, 899, 488 N.E.2d 828, 829 (1985). In consequence, even assuming that the June 20 offer did not lapse by passage of time, the receipt by Dushas and Le Timon of the August 9 letter demanding full payment revoked the offer. S & G's August 17 fax, even if otherwise a sufficient acceptance, was incapable of creating a contract because the offer no longer was outstanding.

■ We need not rest on this ground alone. The June 20 fax offered to settle for $40,000 and directed that the owners remit the funds if that amount were acceptable.

The August 17 fax did not commit the owner to pay any amount unconditionally and did not specifically refer to the sum of $40,000. It was an expression of willingness to pay an unspecified sum of money in September if the owner was successful in collecting other funds.

■ An acceptance must be positive, unambiguous and contain no material variance from the terms of the offer. *E.g., Strassburg v. Ricotta*, 104 A.D.2d 723, 724, 480 N.Y.S.2d 649, 650 (4th Dept.1984); *Roer v. Cross County Medical Center Corp.*, 83 A.D.2d 861, 441 N.Y.S.2d 844 (2d Dept.1981). The August 17 fax met none of these criteria. It was conditional upon other collections as to whether any payment would be forthcoming. It was ambiguous as to the amount. And it materially varied from the offer, which in June contemplated prompt payment, by suggesting possible payment at the end of September. In consequence, the August 17 fax was not a valid acceptance, even assuming there then was an offer capable of acceptance.

*Oral Agreement*

■ This leaves the question whether there was an oral agreement to settle the matter for $40,000 and, if so, whether proof of such an agreement is permissible under the Statute of Frauds or any comparable provision of Greek law. The parties agree that the Statute of Frauds and comparable provisions of Greek law do not apply here.[2] In consequence, in view of the fact that the Dushas affirmation and the Pappaceno affidavit are in direct conflict as to whether there was an oral agreement, summary judgment must be denied.

Accordingly, the cross-motions for summary judgment both are denied.

SO ORDERED.

---

2. Pl.Supp.Mem. at 3; Def.Supp.Mem. at 2–3.